## In re FORBES.†

### (Circuit Court of Appeals, Ninth Circuit. March 9, 1911.)

### No. 1,845.

**1. HOMESTEAD (§ 66*)—EXEMPTION—STATUTES.**

Under Arizona Territorial Act March 21, 1907 (Laws 1907, c. 79) § 1, providing that a homestead shall consist of a dwelling house in which the claimant resides and the land on which the same is situated or land that the claimant shall designate, providing it is in one compact body not to exceed $2,500 in value, a homestead exemption may be a dwelling house and the land on which it is situated or real property in a compact body, provided the exemption in either case does not exceed $2,500 in value.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 93, 96, 97; Dec. Dig. § 66.*]

**2. ATTACHMENT (§ 184*)—LIEN—MERGER.**

Where an attachment was levied on land which the debtor subsequently selected as a homestead, the attachment lien was merged in the judgment obtained by the attaching creditor.

[Ed. Note.—For other cases, see Attachment, Dec. Dig. § 184.*]

**3. BANKRUPTCY (§ 198*)—ATTACHMENT—EXEMPT PROPERTY—VACATION.**

Bankruptcy Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), provides that the trustee of the bankrupt's estate shall be vested by operation of law with the bankrupt's title as of the date he was adjudged a bankrupt, except as to exempt property. Section 67f provides that all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of the bankruptcy petition against him shall be void in case he is adjudged a bankrupt, and the lien be deemed wholly discharged, unless the court shall order the lien preserved for the benefit of the estate, etc. *Held*, that section 67f was applicable to liens acquired through legal proceedings against the bankrupt within four months prior to the filing of the bankruptcy petition without reference to whether the lien was acquired on exempt or nonexempt property, so that an attachment on property of the bankrupt subsequently exempted to him as a homestead was dissolved by bankruptcy proceedings, though the property did not pass to the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 198.*]

In the matter of bankruptcy proceedings of S. J. Forbes. One Julie H. Pitt demanded that the proceeds of a sale of property on which she had levied an attachment, but which was claimed by the bankrupt as a homestead, be set apart to her. Referee's order denying the application and distributing the money among the creditors pro rata having been set aside and the money awarded to petitioner, the bankrupt files a petition for revision. Petition granted. Determination reversed.

S. J. Forbes on July 1, 1904, executed and delivered his promissory note to Julie H. Pitt for the sum of $2,000. On February 4, 1908, the note being due and unpaid, Julie H. Pitt, as plaintiff, brought suit thereon against S. J. Forbes in the district court of the territory of Arizona in and for the coun-

---

ty of Graham. The plaintiff on the same day caused a writ of attachment to issue against the property of the defendant, and by levy made by the sheriff under the attachment certain property belonging to the defendant was attached including lot 43 of San Francisco town site, at Clifton, Ariz. The sheriff held possession of this property until May 12, 1908, when he surrendered the same to F. W. Herzke, who on that day had been appointed trustee in bankruptcy of the estate of S. J. Forbes. It appears from the findings of facts that on March 8, 1908, a petition in involuntary bankruptcy had been filed in the district court of the territory praying that Forbes be adjudged a bankrupt on the ground of insolvency. On April 4, 1908, Forbes was adjudged a bankrupt on the ground alleged in the petition, and on May 12, 1908, as before stated, F. W. Herzke was appointed trustee in bankruptcy, and took possession of the estate of the bankrupt, and thereafter, under an order of the referee in bankruptcy, sold lot 43 for $4,100. The total value of the estate converted into money was $9,131.54. On February 7, 1908, or three days after the levy of the attachment on lot 43 in the suit of Pitt v. Forbes, the latter filed a homestead declaration upon lot 43, alleging that he was the head of a family, and that he and his family resided at the town of Clifton, county of Graham, in the territory of Arizona; that he designated lot 43 and claimed the same as his homestead under the laws of the territory. This declaration was filed for record in the recorder's office for the county of Graham on February 14, 1908. It was declared in the homestead declaration that the value of the lot was $2,500. On May 14, 1908, Julie H. Pitt made proof of her claim against the bankrupt on a judgment obtained against him on March 4, 1908, but did not in her proof state that she claimed an attachment lien on any of the property of the bankrupt. In the verified schedule of resources and liabilities filed by the bankrupt in the bankruptcy court on May 27, 1908, the bankrupt claimed an exemption in lot 43 under the laws of the territory, and on June 17, 1908, the trustee set apart to the bankrupt an exemption of $2,500 in said lot, if the lot could be sold for that amount. On February 9, 1909, Julie H. Pitt filed with the referee a petition stating that on December 21, 1908, she had obtained judgment by default against the bankrupt for the sum of $2,240.66, interest, and costs; that this judgment directed a sale of the lot to satisfy the judgment; that the trustee had disregarded her attachment lien and had sold said property, and was holding in his possession $2,500 set aside to the bankrupt as exempt. The petition demanded that the money be paid to the petitioner in satisfaction of her judgment lien. On March 25, 1909, the referee made an order distributing this money among the creditors pro rata, and thereupon this order was taken for review to the judge of the district court, and the court thereafter awarded the same to Julie H. Pitt in satisfaction of her judgment lien, and the same was thereupon paid to her by order of the court in the bankruptcy proceedings. The bankrupt brings the matter into this court upon a petition for revision of the proceedings in matter of law.

L. Kearney, for petitioner.

J. E. Barry, for respondent.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The bankrupt claims an exemption right in lot No. 43 in the sum of $2,500. The provisions of the bankruptcy act (Act July 1, 1898, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421]) applicable to this case are: Clause 11 of section 2, vesting courts of bankruptcy with jurisdiction "to determine all claims of bankrupts to their exemption." Section 47, cl. 11, makes it the duty of trustees to "set apart the bankrupt's exemptions and report the items and estimated value thereof to the court as soon as practicable after their appointment." Section 6 provides:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months, or the greater portion thereof, immediately preceding the filing of the petition."

Section 1 of the act (page 545) provides that the word "state" shall be construed as including the territories.

The law of the territory of Arizona in force at the time of the filing of the petition in bankruptcy was the "Act to regulate homesteads and exemptions," approved March 21, 1907, to take effect May 1, 1907. Laws of Arizona, pp. 149–154, c. 79.

Sections 1, 2, and 13 of this act provide as follows:

"Section 1. Every person who is at the head of a family and whose family resides within this territory, may hold as a homestead, exempt from attachment, execution and forced sale, real property to be selected by him or her. which said homestead shall be in one compact body, not to exceed in value the sum of two thousand five hundred ($2,500.00) dollars, and shall consist of the dwelling house in which the claimant resides and the land on which the same is situated or of land that the claimant shall designate, provided the same is in one compact body.

"Sec. 2. Any person wishing to avail himself or herself of the provisions of the foregoing section shall make out under oath his or her claim in writing, showing that he or she is the head of a family, and also particularly describing the land claimed and stating the value thereof; and shall file the same for record in a book to be kept for that purpose in the office of the county recorder in the county where the land lies."

"Sec. 13. Nothing contained in this title shall be so construed as to impair, or in any way affect, any mortgage or lien that may have attached to land before such land was claimed as a homestead."

When the bankrupt filed his homestead declaration with the county recorder on February 7, 1908, the lot claimed as a homestead was under attachment in the suit of Pitt v. Forbes. Under section 13 of the territorial act of March 21, 1907, the declaration did not impair or in any way affect the attachment lien; that is to say, the homestead continued to be subject to this lien notwithstanding the declaration.

But, turning now to the bankruptcy act, we find that by the provisions of 67f:

"All levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and his property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate. * * * Provided, that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

It does not appear from the record that the attachment lien in this case was saved or preserved by any of the exemptions contained in the statute.

Section 1 of the territorial act of March 21, 1907, provides that the homestead "shall consist of a dwelling house in which the claimant

186 F.—6

resides, and the land on which the same is situated; or of land that the claimant shall designate, providing the same is in one compact body." The exemption in favor of the bankrupt may therefore be a dwelling house and the land on which it is situated, or real property providing it is in one compact body, and the value of the exemption in either case is not to exceed $2,500. The claimant of the homestead in this case did designate as his homestead lot 43 of the San Francisco town site, and this lot appears to be in one compact body. The trustee set it apart as required by clause 11 of section 47 of the bankruptcy act, and reported the fact to the court, together with the estimated value thereof; and this report was confirmed by the court. The attachment lien for $2,025.25, debt and costs $17.50, making a total lien of $2,042.75, covered all the bankrupt's property, and was merged in a judgment for $2,240.66. The value of the bankrupt's homestead exemption was under the territorial statute $2,500. The value of lot 43 as fixed by the sale was $4,100. The total estate converted into money was $9,131.54.

It is contended by the respondent that by section 70a of the bankruptcy act the title to the exempt property did not pass to the trustee, and that the lien of attachment was therefore not dissolved by section 67f. Section 70a provides in substance that the trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt. But the provision of section 67f is not limited in the annulment of liens to property that passes to the trustee. It is general and sweeping, and applies to liens acquired through legal proceedings against the bankrupt during the four-months period prior to his filing his petition in bankruptcy. Collier on Bankruptcy (8th Ed.) p. 161. Thre is some conflict in the authorities upon this question, but we think the interpretation placed upon the statute by Judge Jones in the case of In re Tune (D. C.) 115 Fed. 906, 910, is correct. His discussion of that question is so full and satisfactory that we append his opinion on that point in full:

"The question then arises, Was the attachment lien dissolved by the adjudication? It is urged that a court of bankruptcy cannot concern itself with liens upon exempt property or their enforcement. It cannot be denied that it ought to view with concern an attempt to create a lien upon exempt property pending discharge. It is its duty to see that legal remedies for collection of debts, from which discharge may absolve, shall not be allowed to create liens upon property set apart to the bankrupt, so as to nullify the policy of the law, by subjecting the exempt property to debts from which the discharge intended to free it. It is insisted that, as the raft of logs was exempt property, the provisions of the bankrupt act annulling attachments and liens cannot affect the levy in this case, as those provisions were made for the benefit of creditors who cannot share in the exempt property, and no disposition the debtor may make or suffer to be made can amount to a preference. All enlightened governments endeavor to guard against the distressing consequences resulting from the inexorable collection of debt, the enforcement of which shapes in so many ways the condition and destiny of the debtor, by granting liberal exemptions, and providing for periodic discharge from debt. To accomplish these results, the bankrupt law not only relieves the debtor from all debts, with a few exceptions, but to all intents and purposes makes the bankrupt a creditor with a lien, so to speak, and prefers him to creditors to the extent of his exemptions in distributing his assets. This cardinal purpose dominates the whole law. When the statute

deals with the dissolution and annulment of attachments, judgments, etc., it is careful to specify the exception, and the only exception in which the bankrupt's exempt property shall not be affected by the changed legal status imparted to the rest of his estate by the dissolution of attachments and liens; and that is the case of conveyances made to hinder, delay, and defraud creditors. The subdivision in which this is provided is preceded by one relating to the same general subject, in which no such exception is made; and it is followed by another section which is peremptory and sweeping in its language that 'all liens shall be deemed null and void, and the property affected shall be wholly discharged and released and shall pass to the trustees as a part of the estate of the bankrupt.' If the statute did not intend to except exempt property from the effect of its policy in declaring all liens void, save in the particular instance mentioned, why use such sweeping and peremptory language as necessarily to include all the bankrupt's property in all other sections specifying what shall pass to the trustee? This studied difference in the language of the different subdivisions of the same section, which deals with liens and the effect of their dissolution or annulment, cannot be ignored in ascertaining the legislative intent. It is significant of a purpose not to exclude exempt property, save in the one specified instance, from the benefit of the annulment of liens, and to pass it to the trustee for the benefit of the bankrupt. The main reason for the four-months provision was to prevent the race by creditors to seize the estate of the insolvent when it is found that he is in failing circumstances, and to prevent the preferences which would follow if liens and attachments were allowed during that period. This purpose would be wholly defeated if liens could be created upon the exempt property. Some creditors would unquestionably be preferred. Some would receive satisfaction in whole, some in part, and some nothing. All this, in the face of the policy of the statute to preserve the exempt property, and to require all creditors who had not acquired liens older than four months, or which are protected, to share equally in the bankrupt's estate."

The rule stated in Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061, is that the title to the property of a bankrupt which is generally exempted by the law of the state in which the bankrupt resides remains in the bankrupt and does not pass to the trustee, but this was said with respect to an exemption covering all the property of the bankrupt, and cannot be applied to an exemption of a homestead or real estate of a specified value less than the actual value, where the trustee is directed by the statute to determine the claim of the bankrupt to the exemption and report its estimated value to the court. We think that, under the bankruptcy act, the homestead exemption in this case to the value of $2,500 continued in the bankrupt; that respondent's attachment lien was dissolved and bankruptcy proceedings were necessary to determine the value of the property that the excess might be preserved for the benefit of the creditors.

The order of the District Court directing the trustee to pay to Julie H. Pitt, the attaching creditor, the sum of $2,500, the remainder in the hands of the trustee as the proceeds of the sale of the property attached, is reversed, with costs in favor of the petitioner, and the cause is remanded to further proceedings herein not inconsistent with this opinion.