[Civil No. 1517.   Filed June 2, 1916.]

[157 Pac. 972.]

## SAM WUICICH, Appellant, v. SOLOMON–WICKERSHAM COMPANY, a Corporation, Appellee.

1. STATUTES—CONSTRUCTION.—Since homesteads are purely creatures of statute, it must be looked to, to determine the meaning of homestead, and, if its language is plain, the courts must follow it, but, if ambiguous, construction of other similar statutes may be consulted.

2. HOMESTEAD—WHAT CONSTITUTES—BUSINESS PROPERTY.—Under Civil Code of 1913, paragraph 3288, providing that every head of a family whose family resides in the state may hold as homestead, exempt from attachment, execution and forced sale, real property to be selected by him, in one compact body, consisting of the dwelling-house in which he resides and the land on which it is situated, or of land that he shall designate, the homestead may consist of real estate, if properly selected, whether it is occupied by the claimant for a dwelling or not.

3. HOMESTEAD — RIGHT TO EXEMPTION — OWNERSHIP IN COMMON. — Under such statute and paragraph 3291, providing that the homestead may be selected from community property or separate property, and in accord with public policy to protect family property and prevent the family from becoming a public charge, the community property of the husband and wife does not lose its character by investment in business property in common with another, but is still exempt as a homestead, if claimed.

[As to homestead exemption as extending to premises used as hotel or lodging-house, see note in Ann. Cas. 1913E, 1256.]

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Reversed and remanded.

Mr. F. C. Jacobs, for Appellant.

Mr. Geo. R. Hill and Mr. E. W. Miller, for Appellee.

ROSS, C. J.—The Miami Mercantile Company, a partnership composed of R. L. Tadich, M. L. Tadich and Sam Wuicich, was sued by appellee, who caused to be issued and levied upon the property hereinafter described a writ of attachment to secure the payment of any judgment that might be obtained. The property so levied upon was lots numbered 422 and 424, block 16, of the original town site of Miami, upon which lots was situate a two-story concrete building, the first floor of which is divided into two rooms intended for business purposes; the second floor being intended for a rooming house or hotel. After the attachment was levied, appellant Wuicich in due form filed a homestead declaration upon said lots 422 and 424, and in his declaration for homestead stated that the value thereof was $4,000, and that the same was community property of himself and wife. The regularity

and sufficiency of the claim of homestead is not questioned. The record discloses that appellant Wuicich was a joint owner of an undivided one-half interest in said lots; the other undivided one-half being owned by one Martin Despot. The claim of exemption was disallowed by the court, and judgment entered foreclosing the attachment lien and ordering the property sold to satisfy the judgment. Appellant appeals from the judgment of the lower court, assigning as error that the property was not subject to attachment and judgment.

The contention of the appellee is: First, that under our homestead law the head of a family is only entitled to claim that land as his homestead upon which is situated his dwelling-house and in which he resides; second, that the head of a family cannot claim a homestead in real estate or land held in tenancy in common. Homesteads are purely creatures of the statute, and we must therefore look to our own statutes to find out what that term or designation means. If the language is plain, it is the duty of the court to give it effect by following it; if its meaning be doubtful, we may look to the reasoning of other courts upon similar statutes, if there be any, to aid us in the construction of our statute. Our statute is unique in at least two respects: First, it has no prototype, so far as we can find; and, second, it is without ambiguity—its meaning is plain and easily understood. Those entitled to a homestead are named, and the homestead defined, by paragraph 3288 of the Civil Code of 1913. This paragraph reads:

"Every person who is the head of a family, and whose family resides within this state, may hold as a homestead, exempt from attachment, execution and forced sale, real property to be selected by him or her, which homestead shall be in one compact body, not to exceed in value the sum of four thousand dollars, and shall consist of the dwelling-house in which the claimant resides and the land on which the same is situated or of land that the claimant shall designate, provided the same is in one compact body."

It will be noted that the exemption is of "real property," and this real property may consist, first, of the dwelling-house in which the claimant resides and the land on which the same is situated; or, second, this real property may consist

"of land that the claimant shall designate, provided the same is in one compact body." The privilege or right of the head of a family to select real property other than the dwelling-house in which he resides, it would seem, is here plainly and unambiguously given. Under this privilege he may select unimproved land, provided it is in one compact body and does not exceed $4,000 in value, or he may select, with the same limitation, improved business property or improved farming land, whether it has a dwelling on it or not. In other words, the legislature intended that every head of a family living in this state should have exempt from attachment, execution or forced sale at least $4,000 worth of real property, whether it was utilized as a home or not. If claimed as a home, it must be occupied as such, and cannot exceed in value $4,000; if not used and claimed as a home, it must be limited to a valuation of $4,000, and, whichever it be, the dominating central idea, under our statute, is not, like that in most of the states, that it shall be occupied, but that it shall be a fund or asset to which the family may look for support, free from creditors.

We cannot follow the appellee's course of reasoning, wherein it undertakes to say that the homestead in this state can only be of "a dwelling-house in which the claimant resides and the land on which the same is situated." Our statute is not, as appellee contends, the same as the California statute, and it would be a perversion of its language and its meaning to restrict the homestead as contended for. The California statute reads:

"The homestead consists of the dwelling-house in which the claimant resides, and the land on which the same is situated, selected as in this title provided." Civ. Code, § 1237.

True, some of this language is used in our statute; but the words "real property," preceding it, and the language following it, and, indeed, the whole context, combine to refute and deny the applicability of the California decisions as to what is exempt as a homestead under our statute. The territorial act of March 21, 1907 (Acts 1907, c. 79), was exactly the same as paragraph 3288 of the Civil Code of 1913, except the value of the homestead was limited to $2,500. *In re Forbes,* 186 Fed. 79, 108 C. C. A. 191, Justice MORROW

construed the homestead law of 1907. His construction is condensed in the syllabus as follows:

"Under Arizona Territorial Act March 21, 1907 (Acts 1907, c. 79), paragraph 1, providing that a homestead shall consist of a dwelling-house in which the claimant resides and the land on which the same is situated, or land that the claimant shall designate, providing it is in one compact body, not to exceed $2,500 in value, a homestead exemption may be a dwelling-house and the land on which it is situated, or real property in a compact body, provided the exemption in either case does not exceed $2,500 in value."

It is suggested by the appellee that the Forbes case did not call for a construction of the homestead law, and that Justice MORROW'S decision thereon was purely *obiter dictum.* However, we cannot agree with this statement. The facts were that Forbes, a bankrupt, claimed his homestead exemption by filing "a homestead declaration upon lot 43, alleging that he was the head of a family and that he and his family resided at the town of Clifton, county of Graham, in the territory of Arizona." There was no allegation that he resided on lot 43, or that it was occupied as a dwelling-house. The clear inference is that it was business property, and not residential property. The question as to whether such a piece of property was exempt under the homestead law was squarely before the court, and called for a decision. The determination of the question by that court meets with our approval.

It was suggested in the argument that this decision of the circuit court of appeals was not called to the attention of the learned judge who tried the case; that neither counsel nor the court was aware of its existence. We recite this fact to show that the court was not furnished for his guidance in making up his judgment the only decision that had been rendered at that time construing our homestead law.

Upon the second proposition presented by appellee, to the effect that the homestead cannot be selected from property held jointly or in common, the authorities are not in agreement. 21 Cyc. 504, says, on this point: "There is a sharp conflict of authority." The courts sustaining the right to select a homestead from such property are more numerous and better reasoned than those holding to the contrary. Homestead statutes are enacted as a matter of public policy

and in the interest of humanity. One of the objects is that everything shall not be taken from the family, and it left in a state of penury and pauperism, and its members perhaps a public charge. Such, indeed, we think is the public policy announced by our statute, wherein it exempts to the head of every family residing in this state from attachment, execution, and forced sale "real property . . . not to exceed in value the sum of $4,000," and in permitting the claimant to take a dwelling-house, or in lieu thereof other land, as he may see fit. Paragraph 3291 of the Civil Code of 1913, provides that:

"If the claimant be married the homestead may be selected from the community property, or from the separate property of the husband, or from that of the wife, but in the latter case the wife must join with the husband in making the claim."

The property here claimed as a homestead is the community property, according to the homestead declaration. The accumulation of their joint efforts during coverture was invested in the piece of business property jointly with another; they owning one-half of the property. The community property did not lose its identity or characteristics by reason of this investment; it was distinctly "real property" and community property, such as is mentioned in the statute as subject to a claim of homestead. The first court to announce the rule that "a homestead could not be carved out of land held in joint tenancy or by tenants in common" was the California court in *Wolf* v. *Fleischacker,* 5 Cal. 244, 63 Am. Dec. 121. This rule has been adhered to by that court, and followed by a few other courts; but in *Swan* v. *Walden,* 156 Cal. 195, 134 Am. St. Rep. 118, 20 Ann. Cas. 194, 103 Pac. 931, the California court, speaking through Justice HENSHAW, said:

"Saving, however, in the cases mentioned, this court, which was the first to declare that a homestead could not be impressed upon land held in cotenancy, has, though somewhat reluctantly, felt impelled to adhere to its decisions as a rule of property under the doctrine of *stare decisis,* and such uniformly have been its decisions."

It seems to us that, if the purpose of the homestead law is to be subserved, the heads of families should be permitted

to carve out of land held in joint tenancy, or by tenancy in common, the homestead as unrestrictedly as out of any other real property owned by the claimant. We take this view, because we are satisfied that it more nearly effectuates the purposes of the homestead law, and for the further reason that it seems to us to be not only within the spirit, but the letter, of our statute. It is within the letter of our statute, which provides that the homestead may be selected from the community property if the claimant be married.

The judgment of the lower court is reversed and the cause remanded, with directions that the judgment foreclosing the lien against appellant's property be vacated and held for naught.

FRANKLIN and CUNNINGHAM, JJ., concur.