**In re Thomas M. ALLMAN, Debtor.**

**No. 02–00654–BHC–RJH.**

United States Bankruptcy Court,
D. Arizona.

Dec. 12, 2002.

Gregory A. Ring, Esq., Bullhead City, AZ, Thomas M. Allman, White Hills, AZ, for Debtor.

William E. Pierce, Chino Valley, AZ, Chapter 7 Trustee.

## AMENDED OPINION AND ORDER ON TRUSTEE'S OBJECTION TO DEBTOR'S HOMESTEAD CLAIM

RANDOLPH J. HAINES, Bankruptcy Judge.

Chapter 7 Debtor Thomas M. Allman claims lots 426 and 427 of the Golden Shores Ranchos Unit 2 subdivision as his exempt homestead pursuant to Arizona Revised Statutes ("A.R.S.") § 33–1101.[1] William E. Pierce, the Chapter 7 Trustee, objects to the inclusion of lot 427 as part of the Debtor's exempt homestead, because the Debtor's mobile home residence is on lot 426 and the adjacent lot 427 is vacant. Moreover, the Debtor purchased lot 427 after he purchased lot 426.

Only oral argument was heard on the Trustee's objection, which was essentially urged as a matter of law in the nature of a motion for summary judgment. No evidence has been received other than the exhibits attached to the Trustee's objection consisting of a state law declaration of homestead, which demonstrates that the Debtor's mobile home is installed on lot 426, which had been purchased in January 2001, a title policy showing that lot 427 was subsequently purchased in November of 2001, and a subdivision plot showing the adjacent lots.

■ Apparently the Debtor recorded the declaration of homestead in April of 2002, listing only lot 426 and the mobile home located on it as his homestead. Prior to 1994, Arizona law required that to claim a homestead a resident must record a declaration in the County Recorders Office. In 1994, however, the statute was changed to read: "A person who is entitled to a homestead exemption as prescribed by § 33–1101 holds that exemption by operation of law and no written claim or recording is required."[2] Consequently at oral argument the Trustee essentially conceded, as this Court concludes, that the declaration of homestead is of little or no significance for purposes of Arizona law, and therefore for purposes of the bankruptcy exemption the homestead as claimed on schedule C will generally prevail over any conflicting declaration previously filed under state law.

The pertinent portion of Arizona's homestead law provides as follows:

> Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred thousand dollars in value, any one of the following:
>
> 1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.
>
> . . . .

---

**1.** Pursuant to 11 U.S.C. § 522(d), Arizona opted out of the federal exemptions. A.R.S. § 33–1133.

**2.** A.R.S. § 33–1102. This change was adopted after it became apparent that businesses had sprung up that mailed letters to homeowners warning them that they could lose their homes to creditors unless they filed a homestead, and charged exorbitant fees for

the "service" of recording that document for the homeowner, after the homeowner supplied the necessary information. Notwithstanding the amendment, a resident still may be required to designate a homestead, upon request of a creditor, if the person owns more than one property interest to which a homestead exemption might reasonably apply. *Id.*

3. A mobile home in which the person resides.

4. A mobile home in which the person resides plus the land upon which that mobile home is located.[3]

Because the Debtor resides in a mobile home, paragraph 4 is the pertinent portion of the statute. It does not, by its terms, limit the real property to a single subdivision lot, but rather permits the claim to extend to "the land upon which that mobile home is located." This imposes no acreage or any other kind of size limitation; the only requirement is that the land be land on which the mobile home is located.

Even though the statute distinguishes between dwelling houses and mobile homes, the meaning of "the land" for paragraph 4 may be further informed by paragraph 1, which requires that the real property be limited to "one compact body upon which exists a dwelling house." Again, there is no acreage limitation nor limitation to a specific subdivision lot, so long as the land is in a "compact body."

The homestead statute does not require that the mobile home be located on the "lot" that is also claimed as exempt, or even limit the homestead claim to just one "lot." Indeed, the designation of a parcel of land as a "lot" does not appear to have any legal significance for the homestead statute, and may not be of legal significance for any other purpose under Arizona law, other than for ease of reference in subdivision plats. Even Arizona's subdivision laws do not make "lot" a legal term of art, but instead simply refer to the subdivision of land into "lots, parcels or fractional interests."[4] While the subdivision statute

may be regarded as equating the terms "lot" and "parcel," the homestead statute uses neither of these terms, but merely requires that the mobile home be located on "the land."

Because it lacks any acreage or lot limitation, the homestead statute could be construed to include in the homestead any amount of land so long as (1) the land is in a "compact body," if that concept is appropriately incorporated from the portion of the statute dealing with conventional residential structures, (2) the mobile home is on a part of such land, and (3) the total value of the land and mobile home do not exceed the dollar limitation.

Arizona apparently has no case law construing either "compact body" for purposes of paragraph 1 or "the land upon which that mobile home is located" for purposes of paragraph 4, of the current version of the homestead statute. One reported case suggests, but does not hold, that it is permissible to claim a homestead on two subdivision lots, but the facts in the reported opinion do not clarify whether the house was physically located on both lots or only one of them, although they certainly suggest the latter. *Wheeler Perry Co. v. Mortgage Bond Co. of New York*, 41 Ariz. 247, 17 P.2d 331 (1932).

▪ Lacking any definitive interpretation of the current homestead statute from Arizona courts, we must resort to more general principles, prior law and decisions from other courts. Arizona courts have held that homestead laws should be interpreted liberally to advance their objectives, the fundamental purpose of which is to protect the family against forced sale of home property.[5] The Arizona Supreme

---

3. A.R.S. § 33–1101(A).

4. *See, e.g.,* A.R.S. § 32–2101(54)(defining a "subdivision" as "land or lands divided or proposed to be divided for the purpose of sale or lease, whether immediate or future, into

six or more lots, parcels or fractional interests").

5. "[T]he fundamental purpose of the homestead law is to protect the family against the forced sale of home property from certain

Court has also held that "[i]f the language [of the homestead statute] is plain, it is the duty of the court to give it effect by following it; if its meaning be doubtful, we may look to the reasoning of other courts upon similar statutes, if there be any, to aid us in the construction of our statute." *Wuicich v. Solomon–Wickersham Co.*, 18 Ariz. 164, 166, 157 P. 972 (1916). That case further noted that some of the language of Arizona's homestead statute, as it then existed, was identical to California's, but there was also language that was unique, which permitted the homestead claim to include land on which the Debtor did not reside, provided that it was in "one compact body" and within the dollar limitation.[6] That case upheld a homestead as applied to a business building existing on two lots, in which the Debtor did not reside. The holding does establish that two adjacent subdivided lots can satisfy the requirement that the homestead land be in "one compact body," but does not address the current requirement that a mobile home be located "on" the land.

There is nothing in the current homestead statute that contradicts the holding of *Wuicich* that homestead land can consist of two adjacent subdivided lots, but the statute has been changed to require that the land be used for residential purposes. The requirement that the homestead statute is to be construed liberally to achieve its fundamental purpose, which is to protect the family residence from forced sale, suggests that whatever land is included must be held for residential purposes. In other words, if one of the two adjacent lots is not used for residential purposes but instead, for example, is held for investment purposes (which presupposes that it

creditors, and, to further this purpose, the homestead laws should be interpreted liberally to advance the objectives of the statutes." *Matcha v. Winn*, 131 Ariz. 115, 117, 638 P.2d 1361, 1363 (App.Div. 1 1981)(holding that a declaration of homestead that omits a recitation that the declarant is an Arizona resident is invalid, following the reasoning of California case law).

**6.** "Those entitled to a homestead are named, and the homestead defined, by paragraph 3288 [of the Arizona] Civil Code [of] 1913. This paragraph reads:

'Every person who is the head of a family, and whose family resides within this state, may hold as a homestead, exempt from attachment, execution and forced sale, real property to be selected by him or her, which homestead shall be in one compact body, not to exceed in value the sum of four thousand dollars, and shall consist of the dwelling-house in which the claimant resides and the land on which the same is situated or of land that claimant shall designate, provided the same is in one compact body.'

It will be noted that the exemption is of 'real property,' and this real property may consist, first, of the dwelling house in which the claimant resides and the land on which the same is situated; or, second, this real property may consist 'of land that the claimant shall designate, provided the same is in one compact body.' The privilege or right of the head of a family to select real property other than the dwelling house in which he resides, it would seem, is here plainly and unambiguously given. Under this privilege he may select unimproved land, provided it is in one compact body and does not exceed $4,000 in value, or he may select, with the same limitation, improved business property or improved farming land, whether it has a dwelling on it or not. In other words, the Legislature intended that every head of a family living in this state should have exempt from attachment, execution or forced sale at least $4,000 worth of real property, whether it was utilized as a home or not. If claimed as a home, it must be occupied as such, and cannot exceed in value $4,000; if not used and claimed as a home, it must be limited to a valuation of $4,000, and, whichever it be, the dominating central idea, under our statute, is not, like that in most of the states, that it shall be occupied, but that it shall be a fund or asset to which the family may look for support, free from creditors." *Wuicich*, 18 Ariz. at 166–67, 157 P. at 972–973.

could be severed and sold separately from the residential parcel without violating zoning laws), it may not be appropriate to include such land as part of the homestead claim. This conclusion is compelled by the change in the homestead statute from what it was at the time of *Wuicich,* when homestead land could be held solely as an investment.

A review of cases construing similar language in other states' homestead statutes indicates that most courts do not limit homesteads to a single lot, so long as the multiple lots constitute one compact body that is used for residential purposes. For example, the Wyoming statute permits a homestead to be claimed in "a house and lot or lots in any town or city," and the Tenth Circuit Bankruptcy Appellate Panel concluded: "This does not say that some part of the house must be physically located on every lot that is covered by the homestead right. Certainly adjacent lots could be purchased at different times under different deeds without the resulting homestead violating the literal language of the statute." *In re Kwiecinski,* 245 B.R. 672, 676 (10th Cir. BAP 2000).

In *Anderson v. Odisho,* 90 F.2d 299, 300 (9th Cir.1937), the Ninth Circuit construed the California homestead statute which provided: "The homestead consists of the dwelling-house in which the claimant resides, and the land on which the same is situated, selected as in this title provided." The Debtor claimed as a homestead two contiguous lots, each of about ten acres, one having a large dwelling house in which the Debtor resided and a barn, and the other which had a small dwelling house. A creditor sought to deny the Debtor's discharge because her claim of homestead had concealed the fact that there were two dwellings on the property and that such concealment was done with intent to hinder, delay or defraud creditors. A special

master concluded that "the whole premises [apparently referring to the two lots and two dwelling houses] were necessary for the convenient use and occupation thereof by the bankrupt." *Id.* The Ninth Circuit concluded that even if California law would not permit a homestead to consist of two dwellings, the claim of such a homestead alone is insufficient to demonstrate the requisite intent to hinder, delay or defraud creditors in order to deny a discharge. Even though the Ninth Circuit's holding is not directly on point, it does appear that the special master had concluded there was no impropriety in claiming a homestead consisting of two contiguous lots, at least if "the whole premises were necessary for the convenient use and occupation" by the debtor.

In *In re Stenzel,* 301 F.3d 945, 947 (8th Cir.2002), the Eighth Circuit addressed the Minnesota homestead law that defined the homestead as "the house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated." The debtor lived on a five acre parcel across a county highway from a 155 acre parcel that the debtor farmed. The Eighth Circuit concluded that the issue is a question of fact, not of law, because the Minnesota cases "require a fact-based determination of whether [the debtor] used the 155–acre parcel for farming purposes in such a way that the two parcels were 'occupied and cultivated as one piece or parcel of land, on some part of which is located [debtor's] residence.'" *Id.* at 950.

Other courts have reached similar results on similar language. *See, e.g., In re Fiffy,* 281 B.R. 451 (Bankr.D.Mass.2002); *In re Zantman,* 261 B.R. 41 (Bankr.D.Idaho 2001); *In re Coin,* 241 B.R. 258 (Bankr.S.D.Fla.1999); *In re Jefferson,* 163 B.R. 204 (Bankr.D.N.M.1993); *In re Flatt,* 160 B.R. 497 (Bankr.N.D.N.Y.1993).

Consequently this Court concludes that Arizona courts would interpret the language "plus the land upon which that mobile home is located" to include the entire contiguous parcel of land on which the mobile home sits, regardless of whether it consists of one or more lots as determined by the subdivision plat or assessor's parcel numbers, and regardless of whether all of the land was purchased simultaneously, unless there is evidence that a subdivided portion of the entire parcel is not being used for residential purposes. For example, if there is evidence that a subdivided portion of the parcel was bought and held for investment purposes, or was used in the operation of a business such as a motel or retail store, then a court might conclude that the homestead does not extend to such land. Each case may depend on its own facts, however, because it is common for farmers and ranchers to reside on the same land that generates their income from the business of farming or ranching, and therefore a court might conclude that the operation of such business on land adjoining the residence parcel is not inconsistent with the residential purpose and therefore may be included within the homestead. Because the burden of proof remains on the party objecting to the homestead claim and the statute is to be liberally construed to protect the family residence, evidence of such use that is not inconsistent with residential use will not, of itself, compel denial of the homestead as claimed.

As noted above, the Trustee argued his objection as a matter of law in the nature of a motion for summary judgment, and no evidence has been received. The Court is therefore not presently in a position to determine whether lot 427 may be included within the homestead because there is no evidence of how it is used. Consequently,

IT IS ORDERED denying what the Court has regarded as the Trustee's motion for summary judgment on the objection to homestead. IT IS FURTHER ORDERED setting a status hearing for December 4, 2002, at 9:30 a.m., at Mohave Community College, Kingman Campus, 1971 Jagerson Avenue, Room 1100, Kingman, Arizona, to determine how to proceed to make that factual determination, *i.e.*, whether the Trustee wishes to take discovery and thereafter present testimony, or whether the parties will proceed on the basis of affidavits or stipulated facts.