### In re John L. IRWIN and Esther L. Irwin, Debtors.

### No. 02–16004–PHX–RJH.

United States Bankruptcy Court, D. Arizona.

April 28, 2003.

---

Michael P. Lane, Lane & Nach, P.C., Phoenix, AZ, for trustee.

Thomas C. Nickel, Faith, Ledyard & Nickel, PLC, Avondale, AZ, for Debtors.

RANDOLPH J. HAINES, Bankruptcy Judge.

The Trustee objects to the Debtors' claim that their motor home is an exempt homestead. Because the Court concludes that a motor home can satisfy the definition and purpose of Arizona's homestead law, the Court denies the objection and upholds the homestead claim.

Debtors John and Esther Irwin claim their motor home as an exempt homestead pursuant Arizona Revised Statutes ("A.R.S") § 33–1101(A).[1] Robert MacKenzie, the Chapter 7 Trustee, objects on the ground that Arizona's homestead exemption extends to mobile homes but not motor homes.

This is purely a matter of statutory interpretation because the Trustee agrees that the Debtors are bona fide Arizona residents, that they actually reside in their motor home, that it is their one and only place of residence, and that there is no fraud or attempted abuse of the homestead exemption. The Trustee notes, however, that the Debtors do have another vehicle they use for transportation and have claimed it as an exempt "motor vehicle" under A.R.S. § 33–1125(8), which applies to "one motor vehicle not in excess of a fair market value of five thousand dollars."

A.R.S. § 33–1101 provides:

Any person the age of eighteen or over, married or single, who resides within

---

1. Pursuant to 11 U.S.C. § 522(b)(1), Arizona has opted out of the federal exemptions. A.R.S. § 33–1133(B).

the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred thousand dollars in value, any one of the following:

1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.
2. The person's interest in one condominium or cooperative in which the person resides.
3. A mobile home in which the person resides.
4. A mobile home in which the person resides plus the land upon which that the mobile home is located.

Arizona's exemption statutes, A.R.S. §§ 33–1101—1153, do not define either "mobile home" or "motor home." The "plain meaning" of the statute arguably supports either interpretation. The Trustee argues that everyone knows the difference between a mobile home and a motor home: a mobile home requires another vehicle for transport whereas a motor home is self propelled. The Debtor responds that a motor home satisfies the statutory requirements of being a home that is mobile; indeed, it is *more* mobile than a typical mobile home.

 No Arizona case law specifically addresses whether a motor home qualifies as an exempt homestead, or further elucidates the statutory term "mobile home" for that purpose. Consequently it is necessary to rely on the legislative purpose underlying the statute. The Arizona Supreme Court has stated that "the fundamental purpose of the homestead law is to protect the family against the forced sale of home property from certain creditors, and, to further this purpose, the homestead laws should be interpreted liberally to advance the objectives of the statutes."

*Matcha v. Winn,* 131 Ariz. 115, 117, 638 P.2d 1361, 1362 (1981).

There are other Arizona statutes that define motor homes and mobile homes. For example, the term "motor home" is defined in Title 28, "Transportation," in Chapter 10, "Vehicles Dealers, Automotive Recyclers and Transporters."

In this chapter, unless the context otherwise requires:

. . . .

21. "Motor home" means a motor vehicle that is primarily designed as temporary living quarters and that:

(a) Is built onto as an integral part of, or is permanently attached to, a motor vehicle chassis.

(b) Contains at least four of the following independent life support systems if each is permanently installed and designed to be removed only for purposes of repair or replacement:

(i) A cooking facility with an on board fuel source.

(ii) A gas or electric refrigerator.

(iii) A toilet with exterior evacuation.

(iv) A heating or air conditioning system with an on board power or fuel source separate from the vehicle engine.

(v) A potable water supply system that includes at least a sink, a faucet and a water tank with an exterior service supply connection.

(vi) A 110–125 volt electric power supply.

A.R.S. § 28–4301(21).

The purpose of so distinguishing motor homes from other motor vehicles is apparently limited to "special events," which are exhibitions of new motor homes at a location other than the dealer's established place of business. A.R.S. § 28–4301(33). A separate permit must be obtained by the

dealer for each such special event. A.R.S. § 28–4336(B) & (C). The definition is specifically limited in effect to the chapter dealing with vehicle dealers, and nothing in that statute has any bearing on the legislative purpose of the homestead law to protect people's homes from creditors. Consequently there is no reason to incorporate that definition into the homestead statute.

"Mobile home" is defined in Chapter 11 of Title 33, "Arizona Mobile Home Parks Residential Landlord and Tenant Act." That definition expressly excludes a "recreational vehicle such as a motor home."[2] The stated purpose of that act is "To simplify, clarify and establish the law governing the rental of mobile home spaces and rights and obligations of landlord and tenant," and "To encourage landlord and tenant to maintain and improve the quality of mobile home housing." A.R.S. § 33–1402. The apparent purpose of excluding motor homes is to render the act inapplicable to recreational vehicle campgrounds where occupancy is much more temporary. While the effect of this is to give some greater rights to mobile home owners than to motor home owners, all of those rights pertain to the owners/landlords of the parks, not to the other creditors of the owners of the mobile and motor homes. The definition is also specifically applicable

only to "this chapter," being the Arizona Mobile Home Parks Residential Landlord and Tenant Act, rather than to the entire Title 33, which contains both that chapter and the homestead statutes. Again, therefore, there is nothing in this statute to suggest that its definitions should have any bearing on the homestead law.

Thus the two rules of *Matcha v. Winn* alone may be sufficient to resolve the issue. The Debtors' motor home is admittedly their "home," which Arizona's legislature sought to protect from loss to creditors, and under a liberal interpretation it satisfies the statutory requirement of being a home that is mobile.

This conclusion is further supported by what else the statute says and does not say. There is nothing in the statute that would disqualify a "mobile home" simply because it is self propelled. Indeed, the fact that the Mobile Home Park statute had to specifically exclude motor homes from the definition of mobile homes suggests that they could be understood as included within that meaning if not so specifically excluded. Moreover, the homestead statute indicates there is no necessity that the mobile home be affixed or even customarily used in connection with any particular real estate, because the distinction between paragraphs (A)(3) and

---

2. "Mobile home":

(a) Means either of the following:
(i) A residential structure manufactured on or before June 15, 1976, that is transportable in one or more sections, eight feet or more in body width, over thirty feet in body length with the hitch, built on an integral chassis, designed to be used as a dwelling when connected to the required utilities and not originally sold as a travel trailer or recreational vehicle and which includes the plumbing, heating, air conditioning and electrical systems in the structure.
(ii) A manufactured home built after June 15, 1976, originally bearing an appropriate insignia of approval issued by the United

States department of housing and urban development.
(b) Does not include either of the following:
(i) A recreational vehicle such as a motor home, camping trailer, van, fifth wheel trailer or other type of recreational vehicle.
(ii) A structure known as a park model trailer that is a structure built on a single chassis, mounted on wheels and designed to be connected to the utilities necessary for the operation of installed fixtures and appliances and that has a gross interior area of not less than three hundred twenty square feet and not more than four hundred square feet when prepared for occupancy.
A.R.S. § 33–1409(14).

(A)(4) clearly implies there need be no particular relationship to any real property. Nor is there any language in the statute that suggests that the original design of a structure or the principal use anticipated by the manufacturer has any bearing. The statute only requires that it be a structure "in which the person resides," and that is admitted here.

■ Moreover, the Arizona Supreme Court has made clear that courts interpreting the homestead statute may be guided by the decisions in other states with similar statutes: "If the language [of the homestead statute] is plain, it is the duty of the court to give it effect by following it; if its meaning be doubtful, we may look to the reasoning of other courts upon similar statutes, if there be any, to aid us in the construction of our statute." [3] Many courts have concluded that structures actually used as residences may qualify under similar statutes, without regard to their mobility, design or original purpose.

For example, a Florida bankruptcy court has concluded that a motor home satisfies the statutory requirements for a "mobile home used as a residence." Florida similarly requires that its homestead statutes be construed liberally in favor of the claimant.[4] In *In re Mangano*, 158 B.R. 532, 534 (Bankr.S.D.Fla.1993), the court held that a motor home qualifies for a homestead exemption because of its intended and actual use as a dwelling house, and because the requirement of a liberal interpretation mandates that the court focus more on the actual use of the home rather than its size or design. Other Florida cases have reached similar conclusions as to boats, motor homes and travel trailers.[5]

There are Florida cases that deny homestead protection to nontraditional dwellings "designed to serve as a recreational vehicle rather than a permanent dwelling." [6] But as the *Mead* court noted, the Florida statute, like the Arizona statute, does not seem to contain any requirement based on design. More importantly, the Florida statute is distinguishable from Arizona's because it has a specific provision for leasehold estates, i.e. where the debtor owns the house or dwelling, but not the property upon which it sits. Florida's leasehold homestead provision states:

---

**3.** *Wuicich v. Solomon–Wickersham Co.,* 18 Ariz. 164, 166, 157 P. 972 (1916).

**4.** *In re Imprasert,* 86 B.R. 721 (Bankr. M.D.Fla.1988). Florida's homestead exemption may be found at FLA. CONST. Art. X, § 4 and FLA. STAT. Ch. 222.

**5.** *E.g., In re Mead,* 255 B.R. 80, 85 (Bankr. S.D.Fla.2000)(34′ cabin cruiser qualifies; it is "immaterial how the utilities are connected to a boat or motor home, and whether or not a boat or motor home was designed for or capable of recreational travel," because the "relevant question is whether the boat or motor home is the debtor's only residence"); *Miami Country Day Sch. v. Bakst,* 641 So.2d 467 (Fla.Dist.Ct.App.1994)(a house boat, used as a dwelling but incapable of use as a vehicle, qualifies for a homestead exemption); *In re Bubnak,* 176 B.R. 601, 603 (Bankr.M.D.Fla.

1994)(a motor home with a "permanent hookup for sewer, electric, cable TV and telephone" qualifies because it "has the characteristics of permanency which is essential to the claim," without indication of what statutory language requires such permanency); *In re Meola,* 158 B.R. 881 (Bankr.S.D.Fla. 1993)(a travel trailer qualifies for a homestead exemption because it is similar to a motor home).

**6.** *In re Walter,* 230 B.R. 200, 203 (Bankr. S.D.Fla.1999)(48′ recreational boat); *see also In re Brissont,* 250 B.R. 413 (Bankr.M.D.Fla. 2000)(37′ cabin cruiser); *In re Andiorio,* 237 B.R. 851 (Bankr.M.D.Fla.1999)(recreational vehicle with removable utility hookups lacked permanent attachment required to qualify); *In re Major,* 166 B.R. 457 (Bankr.M.D.Fla. 1994)(34′ boat not designed as permanent dwelling).

"Any person owning and occupying any dwelling house, including a mobile home used as a residence ... on land not his or her own which he or she may lawfully possess, by lease or otherwise, and claiming such house ... as his or her homestead, shall be entitled to the exemption of such house ... from levy and sale as aforesaid." FLA. STAT. § 222.05, quoted in *Mead,* 255 B.R. at 83. This location "on land" requires Florida courts to consider how, where and how permanently a boat is docked or a motor home is parked. *See Mead,* 255 B.R. at 83 ("The boat dock is the real estate that satisfies the 'on land' element of the statute."). "There must be a sufficient nexus between a residence being claimed as exempt and a fixed property interest in Florida (the 'physical permanency requirement') in order for the residence to qualify for the homestead exemption."[7] Therefore Florida's "on land" requirement may disqualify certain boats and motor homes, depending on how and where they are maintained. Arizona's statute, however, does not contain any requirement for a connection to land in subparagraph (3).

Idaho also has a homestead statute similar to Arizona's. The bankruptcy court there has also concluded that a motor home qualifies, based on clear and cogent reasoning that is equally applicable to Arizona's statute (except for the requirement that it be the debtor's *principal* home):

The amended statute limits the homestead exemption not by the kind of property which it may constitute, but rather by requiring that whatever property is claimed as a homestead be the debtor's actual, principal home. The new law also eliminated the need to record a

declaration of exemption in the county real estate records. In other words, it is evident to the Court from these changes that the historical notion that a homestead exemption must necessarily be intertwined with a debtor's interest in real property is now a dinosaur.

In light of the Legislature's change of thinking, to hold that a motor home cannot be construed to be a mobile home or dwelling house for homestead purposes would be to elevate form over substance and would clearly not be construing the exemption statutes liberally in Debtors' favor. While this determination depends entirely upon the facts of this case, here the motor home has all the essential elements of a traditional, permanent residence, and is actually used by Debtors as such. Surely, there would be no issue present in this case but for the fact that Debtors' home has an engine.

*In re Peters,* 168 B.R. 710, 712 (Bankr.D.Idaho 1994). Other states with similar homestead statutes have extended the interpretation to even more non-traditional homes actually used as residences.[8]

The language and structure of Arizona's homestead statute coupled with a liberal interpretation requires the Court to focus more on the actual use of the structure rather than its mobility, design, originally intended use or relationship to land. Consequently the Court concludes that a motor home, actually used as the debtor's residence, can qualify for the homestead exemption under A.R.S. § 33–1101(A)(3). Therefore the Trustee's objection is over-

---

7. *In re McClain,* 281 B.R. 769, 773 (Bankr. M.D.Fla.2002).

8. *In re Ross,* 210 B.R. 320 (Bankr.N.D.Ill.1997)(fishing boat); *In re Laube,* 152 B.R. 260 (Bankr.W.D.Wis. 1993)(semi-truck cab); *In re Scudder,* 97 B.R. 617 (Bankr.S.D.Ala.1989)(house boat).

ruled and the Debtors' homestead claim is sustained.