FILED

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**                    FEB 28 2014

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   AZ-13-1273-KuDPa |
| AMADO G. CALDERON, | Bk. No.   4:12-bk-16880-EWH |
| Debtor. | |
| AMADO G. CALDERON, | |
| Appellant, | |
| v. | **O P I N I O N** |
| BETH LANG, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on January 23, 2014
at Tempe, Arizona

Filed – February 28, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Eileen W. Hollowell, Bankruptcy Judge, Presiding

Appearances:     Barry W. Rorex argued for appellant Amado G.
Calderon; Trudy A. Nowak argued for appellee Beth
Lang, chapter 7 trustee.

Before:   KURTZ, DUNN and PAPPAS, Bankruptcy Judges.

KURTZ, Bankruptcy Judge:

**INTRODUCTION**

In his chapter 7[1] bankruptcy case, debtor Amado Calderon claimed as exempt his former family residence. Chapter 7 trustee Beth Lang objected to Calderon's homestead exemption claim because, at the time of Calderon's bankruptcy filing, Calderon no longer was living at the residence, nor was he storing his personal possessions there. Instead, Calderon was living elsewhere and renting out the residence.

The bankruptcy court sustained the trustee's objection and disallowed Calderon's homestead exemption claim, opining that Arizona law did not permit Calderon to hold and retain a homestead exemption in the residence based solely on a vaguely expressed intent to return someday to the property. Calderon appealed.

We disagree with the bankruptcy court's interpretation of Arizona homestead exemption law. Arizona law permits debtors to move out of their homesteads for up to two years and retain preexisting homestead exemption rights, so long as they don't manifest a clear intent for their absence from the homestead to be permanent. Because the bankruptcy court incorrectly interpreted Arizona homestead exemption law, we VACATE AND REMAND.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

**FACTS**

Calderon and his wife Sheri purchased the residence in 2002, and Calderon lived in the residence until he and Sheri divorced in 2011. Pursuant to the couple's divorce settlement, Sheri conveyed her interest in the residence to Calderon in March 2011, and he thereafter became the sole owner of the residence. In April or May 2011, Calderon moved out of the residence and moved into a different house that he rented from a man named Paul Berkley ("Berkley House"). Meanwhile, Calderon rented out the residence to a couple named Brian and Lisa Torma. The Tormas and Calderon entered into a written twelve-month lease agreement that commenced on May 1, 2012 and was scheduled to end on April 30, 2013. However, the lease agreement also contained an annual renewal option, which the Tormas apparently exercised.

Calderon commenced his bankruptcy case in July 2012. In the initial version of his schedules, Calderon listed his ownership interest in the residence, but identified the Berkley House as his home address and the location where he kept all of his personal property. Calderon also scheduled the income he derived from renting the residence as $1,895 per month and his monthly mortgage expense for the residence, referred to in Schedule J as his "rental property," as $2,209 per month. Even though Calderon's monthly mortgage payments for the residence exceeded the rental income he was receiving from the residence, Calderon filed a statement of intention indicating that he desired to keep the residence.

Calderon did not attempt to claim as exempt his equity in the residence in the initial version of his schedules. However,

3

he filed an amended Schedule C in September 2012 in which he claimed a homestead exemption in his interest in the residence under Arizona Revised Statutes ("A.R.S.") § 33-1101(A). According to his amended Schedule C, the residence was worth roughly $300,000, and he had roughly $84,000 in equity in the residence, in which he claimed the exemption.

The trustee filed an objection to Calderon's homestead exemption claim, asserting that Calderon could not claim a homestead exemption in the residence under A.R.S. § 33-1101 because he had moved out of the residence in May 2011 and because he was renting the residence to the Tormas.

Calderon filed a response opposing the objection. Calderon disputed that he had abandoned his homestead. He claimed that he moved out of the residence and was renting it as a temporary measure to reduce his housing expenses. He further claimed that he intended to return to the residence as soon as his lease with the Tormas expired.

The bankruptcy court scheduled the matter for an evidentiary hearing on May 1, 2013. In addition to setting the hearing date, the court's scheduling order contained deadlines for completing various aspects of pre-hearing procedure, including a deadline for exchanging lists of witnesses and exhibits and a deadline for submitting to the court a joint pre-hearing statement. The court's scheduling order further warned the parties that sanctions might be imposed if either party failed to cooperate or comply with the pre-hearing procedures.

The trustee duly filed a list of witnesses and exhibits and a unilateral pre-hearing statement. The trustee also filed a

4

legal brief in support of her objection. Calderon, on the other hand, did not participate in the filing of the required joint pre-hearing statement, nor did he otherwise comply with the court's pre-hearing requirements. The only thing Calderon filed in advance of the hearing was a one-page motion, filed two days before the hearing, seeking to convert his bankruptcy case from chapter 7 to chapter 13. The trustee opposed the motion to convert, contending that it was part of Calderon's bad-faith tactics aimed at obstructing the resolution of the trustee's exemption claim objection.

The bankruptcy court held the hearing on the exemption claim objection on May 1, 2013, as scheduled. As a sanction for Calderon's noncompliance with the scheduling order, the bankruptcy court prohibited Calderon from presenting any evidence or argument in support of his exemption claim.[2] As a result, the bankruptcy court relied entirely on the evidence and testimony presented by the trustee. The trustee was the sole witness to testify, and her testimony largely consisted of what she learned from various documents of Calderon's, including his bankruptcy schedules, his tax returns, his divorce settlement with his wife and his lease with the Tormas.

The trustee's evidence tended to show that Calderon was the

---

[2]Calderon did not challenge in his appeal brief the propriety of the bankruptcy court's sanction excluding him from presenting any evidence. As a result, he has forfeited the issue, and we will not address it. See Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu, 626 F.3d 483, 487–88 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (citing Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994)).

5

sole owner of the residence but that he was not living there; rather, he was living at the Berkley House and was renting out the residence. According to the trustee's testimony, her exemption claim objection was based on the fact that Calderon no longer lived at the residence. At the same time, the trustee conceded during cross-examination that Calderon had been living at the residence through April 2011. The trustee further conceded that Calderon, through his counsel, had expressed a generalized intent "to move back into [the residence] at some point."[3] Hr'g Tr. (May 1, 2013) at 31:14-22.

At the conclusion of the trustee's presentation of evidence, the bankruptcy court announced its ruling sustaining the trustee's exemption claim objection, and the court later reduced its oral ruling to a written order, which contains the court's holding and its key reasoning. According to the court, the totality of the evidence demonstrated that the debtor was not then living in the residence and had not done so "for the better part of the last two years." Order (May 29, 2013) at 2:6. The court further noted that, after he moved out of the residence, Calderon had been using the property as income-producing property by renting it out.

Based on these facts, the court reasoned, Arizona law did

---

[3]Of course, this is hearsay and probably double hearsay. But no one objected to the trustee's testimony regarding what Calderon's counsel told her about Calderon's intent to move back into the residence. Moreover, the bankruptcy court apparently credited this testimony, as the bankruptcy court posited that Calderon had a vague intent to return to the property. We found no other evidence in the record specifically addressing Calderon's intent to return to the property.

6

not permit Calderon to hold and retain a homestead exemption in the residence, even though he had moved out of the residence less than two years prior to his bankruptcy filing and even though he might have had, as the court described it, a vague intent to return to the property at some unspecified future point. As stated in the bankruptcy court's order sustaining the trustee's exemption claim objection:

> The Arizona homestead exemption set forth in A.R.S.
> § 33-1101(A) is not so broad as to allow the Debtor a
> homestead exemption, even if within two years of his
> filing date, when his intent to return to the Property
> is vague[.]

Order (May 29, 2013) at 1:20-22.

The bankruptcy court entered its order sustaining the trustee's exemption claim objection on May 29, 2013, and Calderon timely filed his notice of appeal on June 10, 2013.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court correctly interpret Arizona homestead exemption law in the process of disallowing Calderon's homestead exemption claim?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's interpretation of state exemption laws. See Hopkins v. Cerchione (In re Cerchione), 414 B.R. 540, 545 (9th Cir. BAP 2009). Under the de novo standard of review, "we consider a matter anew, as if no decision had been rendered previously." Mele v. Mele (In re

7

Mele), 501 B.R. 357, 362 (9th Cir. BAP 2013).

## DISCUSSION

The commencement of a bankruptcy case creates a bankruptcy estate consisting of all of the debtor's property. See § 541; Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1198 (9th Cir. 2012); Gaughan v. Smith (In re Smith), 342 B.R. 801, 805 (9th Cir. BAP 2006). The debtor may exempt property from the estate to extent permitted by applicable law. See § 522(b); In re Jacobson, 676 F.3d at 1198. Typically, the debtor's entitlement to an exemption is determined based on the facts as they existed at the time of the debtor's bankruptcy filing. See In re Jacobson, 676 F.3d at 1199; Ford v. Konnoff (In re Konnoff), 356 B.R. 201, 204-05 (9th Cir. BAP 2006).[4] And the trustee bears the burden of proof to establish that the debtor is not entitled to the claimed exemption. See Rule 4003(c); In re Cerchione, 414 B.R. at 548-49.

Because Arizona has opted out of the federal bankruptcy exemption scheme, Arizona residents are limited to those

---

[4]We are aware of the holding in In re Jacobson, and in England v. Golden (In re Golden), 789 F.2d 698, 700 (9th Cir. 1986), that the bankruptcy court must consider postpetition events when: (1) the debtor claims an exemption in the proceeds from the sale of the debtor's homestead, (2) the applicable homestead exemption law requires the debtor to reinvest the sale proceeds in another homestead within a fixed amount of time, and (3) the time period for reinvestment has not yet run at the time of the debtor's bankruptcy filing. But In re Jacobson and In re Golden are inapposite. As explained below, Calderon's homestead exemption was not subject to an absolute, fixed time limitation. Rather, the key to Calderon's retention of his homestead exemption was whether he intended to permanently remove himself from the residence. See A.R.S. § 33-1104(A)(3).

8

exemptions permitted by Arizona law. See In re Smith, 342 B.R. at 805 (citing A.R.S. § 33-1133). Consequently, we must interpret and apply Arizona law to determine whether Calderon was entitled to claim a homestead exemption in the residence. See id.; see also Renner v. Ariz. Dept. of Econ. Sec. (In re Renner), 822 F.2d 878, 879 n.1 (9th Cir. 1987).

When we interpret state law, we are bound by the decisions of the applicable state's highest court. Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa), 674 F.3d 1083, 1087 (9th Cir. 2012) (citing Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland), 915 F.2d 1236, 1238 (9th Cir. 1990)). And when, as here, the state's highest court has not interpreted the dispositive state law, we do our best to predict how that state's highest court would decide the issue. See In re Kekauoha-Alisa, 674 F.3d at 1087-88. Accord White v. Brown (In re White), 389 B.R. 693, 701 (9th Cir. BAP 2008).

In interpreting Arizona statutes, the Arizona Supreme Court has stated that its duty is to determine the intent of the legislature at the time of enactment. Jackson v. Phoenixflight Prods., Inc., 700 P.2d 1342, 1345 (Ariz. 1985). "Where the language of the Legislature is clear and leaves no opportunity for interpretation, the language must be followed." Id. And "clear language in a statute is given its usual meaning unless impossible or absurd consequences would result." In re Marriage of Gray, 695 P.2d 1127, 1129 (Ariz. 1985).

Specifically with respect to Arizona's homestead exemption statutes, the Arizona Supreme Court has stated that these laws should be liberally interpreted to carry out their fundamental

9

purpose, which is to protect the claimant and the claimant's family from the forced sale of their homestead property by creditors. See First Nat'l Bank of Mesa v. Reeves, 234 P. 556, 558 (Ariz. 1925).[5] The Arizona Supreme Court further has stated:

> [Arizona] Homesteads are purely creatures of the statute, and we must, therefore, look to our own statutes to find out what that term or designation means. If the language is plain, it is the duty of the court to give it effect by following it; if its meaning be doubtful, we may look to the reasoning of other courts upon similar statutes, if there be any, to aid us in the construction of our statute.

Wuicich v. Solomon-Wickersham Co., 157 P. 972, 972 (Ariz. 1916).

The trustee asserts that the resolution of this appeal is governed by the residency requirement necessary to establish a homestead exemption under Arizona law. See A.R.S. § 33-1101.[6] Because Calderon was not living at the residence when he filed

---

[5]At the time Reeves was decided, the exclusive focus of Arizona's homestead exemption was the claimant's family; the Arizona homestead exemption statutes did not protect individuals. See Phlegar v. Elmer, 325 P.2d 881, 882 (Ariz. 1958). More recently, however, the Arizona legislature broadened Arizona's homestead exemption laws to provide homestead exemptions to individuals as well as families. See First Nat'l Bank of Dona Ana Cnty. v. Boyd, 378 F. Supp. 961, 963 (D. Ariz. 1974).

[6]In relevant part, A.R.S. § 33-1101 provides:

A. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred fifty thousand dollars in value, any one of the following:

1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.

(Emphasis added.)

10

bankruptcy, the trustee reasons, he did not qualify for a homestead exemption under A.R.S. § 33-1101. According to the trustee, Calderon's continued occupancy of the residence was a prerequisite for him to be entitled to claim a homestead exemption in the residence, and any such entitlement automatically and immediately ceased when Calderon moved out and began using the residence as a rental property.

The trustee's assertion lacks merit. It is undisputed here that Calderon had been living in the residence and occupying it as his home between 2002 and 2011. This prolonged period of residency was more than sufficient to establish the residence as Calderon's homestead by operation of law. See A.R.S. §§ 33-1101, 33-1102; see also In re Allman, 286 B.R. 402, 403-04 (Bankr. D. Ariz. 2002) (holding that debtor, by operation of law, established his homestead in a mobile home by residing in the mobile home). Once Calderon's homestead was established by operation of law, the controlling question shifted from whether Calderon established a homestead in the residence to whether he abandoned his homestead in the residence.

Accordingly, this appeal hinges on the meaning of A.R.S. § 33-1104, which governs abandonment of homesteads and which provides in relevant part as follows:

A. A homestead may be abandoned by any of the following:

1. A declaration of abandonment or waiver.

2. A transfer of the homestead property by deed of conveyance or contract for conveyance.

3. A permanent removal of the claimant from the residence or the state. A claimant may remove from the homestead for up to two years without an abandonment or a waiver of the exemption.

11

It is undisputed that Calderon did not execute and record a declaration of abandonment or waiver. Nor did he transfer away his homestead by a deed or contract of conveyance. Thus, we are only concerned here with paragraph 3 of § 33-1104(A), which deals with the "permanent removal of the claimant from the residence or the state." (Emphasis added.) In accordance with the Arizona Supreme Court's rules of construction, we presume that the Arizona legislature intended the word "permanent" to have its usual meaning, which is: "Continuing or designed to continue or last indefinitely without change; abiding, enduring, lasting; persistent. Opposed to temporary." Oxford English Dictionary Online (http://www.oed.com/search?searchType=dictionary&q=permanent&_searchBtn=Search) (last visited February 24, 2014); see also Merriam-Webster Online (http://www.merriam-webster.com/dictionary/permanent) (last visited February 24, 2014).

So stated, the usual meaning of the word "permanent" introduces an element of intent into the statutory inquiry. This focus on intent for purposes of determining whether debtors have permanently abandoned their homestead is consistent with the consideration of intent for purposes of determining debtors' "residence" under Arizona's homestead exemption laws. As one Arizona bankruptcy court decision put it, "under Arizona law, the intent of the individual is the critical factor in determining where an individual resides and . . . the individual need not be present at the residence on a day-to-day basis." See In re Elia, 198 B.R. 588, 598-99 (Bankr. D. Ariz. 1996) (citing Garcia v. Garcia (In re Garcia), 168 B.R. 403, 408 (D. Ariz. 1994)).

We also must consider the import of the second sentence of

12

A.R.S. § 33-1104(A)(3). That sentence states: "A claimant may remove from the homestead for up to two years without an abandonment or a waiver of the exemption." Read in a vacuum, this sentence arguably means that, for up to two years, debtors can live somewhere other than their homesteads without being deemed to have abandoned their homesteads. And by negative implication, this sentence also could be read in isolation to mean that, after two years living elsewhere, debtors are deemed to have automatically abandoned their homesteads.

But the Arizona Supreme Court requires us to consider this sentence in context and not in isolation. See Adams v. Comm'n on App. Ct. Appointments, 254 P.3d 367, 374 (Ariz. 2011). And that context includes the first sentence of A.R.S. § 33-1104(A)(3), which focuses on the intended permanency of the removal from the homestead. That context also includes the Arizona homestead exemption statutes as a whole, their intended purpose, and the requirement that we construe the homestead exemption statutes liberally to effectuate their intended purpose. As a result, when read in context, we are convinced that the Arizona legislature did not intend for the second sentence of A.R.S. § 33-1104(A)(3) to create an absolute temporal bar, that on the second anniversary of removal from their homesteads, debtors automatically are deemed to have abandoned their homesteads for exemption purposes. To the contrary, our contextual reading of A.R.S. § 33-1104(A)(3) leads us to conclude that the temporal aspect of the statute simply was meant to aid courts in determining the intended permanency of the removal from the residence. In other words, the Arizona legislature meant to make

13

it harder for debtors to abandon their homesteads simply by moving out of their homes for less than two years, but easier for them to abandon their homesteads if they have been living elsewhere for two years or more. Regardless of the amount of time elapsed, the controlling question always remains the intent of the debtors – whether they intended for their removal to be permanent.[7]

Once so understood, the statute is not particularly difficult to apply in bankruptcy cases. On the petition date, if the debtor has been living elsewhere for less than two years, only evidence of a clear intent of permanent removal will suffice to permit the bankruptcy court to find that the debtor has abandoned his homestead exemption under Arizona law. On the other hand, on the petition date, if the debtor has been living elsewhere for two years or more, then the debtor is presumed to intend for the removal to be permanent, and only evidence of a clear intent for the removal to be temporary will overcome that presumption.

Arizona case law encourages us to consider precedent from other states with similar homestead exemption laws, especially

---

[7]If the Arizona legislature had intended a create a per se rule of abandonment based on two years removal from the residence, it easily could have done so by stating in the statute something like the following: "A homestead may be abandoned by any of the following . . . a removal from the residence of two years or more." Notably, the Arizona legislature did not employ such language. Instead, it provided for abandonment to turn on the intended permanency of the removal and also provided that: "[a] claimant may remove from the homestead for up to two years without an abandonment." (Emphasis added.) We find it significant that the Arizona legislature used permissive language in the statute rather than prohibitive or preemptory language.

14

when there are no binding Arizona cases on point. See Wuicich, 157 P. at 972. But we have not found a homestead abandonment statute from another state with a similar combination of both intent and temporal components.

Nonetheless, it is instructive to note that many jurisdictions fall into one of two "camps" regarding the nature of proof required to establish that debtors intended to abandon their existing homesteads. The first camp requires evidence of a clear intent not to return to the homestead. See, e.g., Thomas v. Graham Mortg. Corp., 408 S.W.3d 581, 589 (Tex. App. 2013) (holding that there must be a clear intent not to use the subject property as a homestead again); In re Wells, 132 B.R. 966, 968 (Bankr. D.N.M. 1991) (holding that debtor who moved out of her homestead but did not manifest "an absolute and unequivocal intent to abandon" the homestead did not abandon the homestead); see also Jones, Givens, Gotcher & Bogan, P.C. v. Berger, 46 P.3d 698, 702 (Okla. 2002) (stating that temporary absence from the homestead and occupancy of another property does not necessarily demonstrate an intent to abandon the homestead and that renting out some or all of the homestead does not as a matter of law demonstrate abandonment); In re Beebe, 224 B.R. 817, 820 (Bankr. N.D. Fla. 1998) ("For a debtor to abandon homestead property, a debtor must state an intention to abandon the property and have an intent of not returning to the property.").

In contrast, the second camp considers the homestead abandoned unless there is evidence of a clear intent to return to the property at a fixed time. See, e.g., In re Nguyen, 332 B.R. 393, 395 (Bankr. W.D. Mo. 2005) (stating that "a vague and

15

indefinite intention to return at some future time under certain conditions is not sufficient to rebut the presumption of abandonment"); In re Patterson, 275 B.R. 578, 584 (Bankr. D. Colo. 2002) (stating that a vague intention to return and resume residency will not preserve a claimant's homestead); see also Wagenbach v. PHI Fin. Servs., Inc. (In re Wagenbach), 232 B.R. 112, 114 (Bankr. C.D. Ill. 1999) ("A removal from the homestead premises will be taken as an abandonment unless it clearly appears that there is an intention to return and occupy them. . . . Such intention must be unequivocal, for an equivocal intention to return is not sufficient.").

In light of our contextual reading of A.R.S. § 33-1104(A)(3), Arizona appears to have one foot firmly planted in each camp. And which camp's law is helpful in a particular case in determining whether the debtors have abandoned their Arizona homestead will depend on how long the debtors have been removed from their homestead at the time of their bankruptcy filing.

The trustee claims that it is "ridiculous" to suppose that debtors subject to Arizona homestead exemption law may absent themselves from their homestead for up to two years without losing a homestead previously established by their prior residence. But this is what A.R.S. § 33-1104(A)(3) explicitly contemplates, and we see nothing ridiculous or absurd in the application of A.R.S. § 33-1104(A)(3) as worded. The statute's temporal dividing line simply represents the Arizona legislature's attempt to enact a clear-cut guideline for courts having to interpret what debtors' absence from their homestead means for purposes of determining whether they intended to

16

permanently remove themselves from their homestead.

As indicated above, the trustee also argues that we don't need to reach the issue of abandonment because there was no homestead to abandon in the first place. Because Calderon moved out of the residence and was renting out the residence when he filed bankruptcy, the trustee reasons, he could not qualify for a homestead exemption, let alone abandon a homestead exemption, under A.R.S. § 33-1101. However, if a homestead established by operation of law under A.R.S. §§ 33-1101 and 33-1102 can be automatically extinguished by a debtor living elsewhere for less than two years, then the second sentence of A.R.S. § 33-1104(A)(3) would be rendered meaningless. In short, we reject the trustee's argument because it would deprive a significant portion of A.R.S. § 33-1104(A)(3) of any meaning.

Even though Calderon, at the time of his bankruptcy filing, had been absent from the residence for less than two years, the bankruptcy court interpreted Arizona's homestead exemption statutes as requiring proof that Calderon held more than a vague intent to return someday to the residence. When, as here, the bankruptcy court has applied an incorrect legal standard, we typically vacate the bankruptcy court's decision and remand so that the bankruptcy court can apply the correct law to the facts of the case. See Hopkins v. Asset Acceptance LLC (In re Salgado-Nava), 473 B.R. 911, 922 (9th Cir. BAP 2012).

On occasion, this Panel has declined to remand and instead has, itself, applied the correct law to the facts previously found when the record has been fully developed on the critical issues and there is no doubt as to the outcome. See, e.g., id.

17

In this instance, we are not wholly convinced that the record was fully developed and the outcome beyond doubt regarding the key issue of Calderon's intent. While the bankruptcy court's written decision included a finding on this point, the evidence presented was thin, even assuming the hearsay statements in the record regarding Calderon's intent were admissible. We leave it to the bankruptcy court to determine, in the first instance, whether the record should be reopened to allow the presentation of additional evidence on the issue of Calderon's intent, or whether the correct interpretation of Arizona law should be applied to the facts previously found on an as-is basis. We express no opinion on how the bankruptcy court should decide this issue.

**CONCLUSION**

For the reasons set forth above, we VACATE the bankruptcy court's order sustaining the trustee's exemption claim objection, and we REMAND for further proceedings consistent with this decision.

18