**NOT FOR PUBLICATION**

FILED

AUG 02 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-16-1390-KuLTa |
| ) | |
| CAROLYN LUCILLE DAVIS, ) | Bk. No.   9:16-bk-11100-PC |
| ) | |
| Debtor. ) | |
| _____ ) | |
| CAROLYN LUCILLE DAVIS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| U.S. BANK NA; WESLEY H. AVERY,) | |
| Chapter 12 Trustee, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on June 22, 2017
at Pasadena, California

Filed – August 2, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Bankruptcy Judge, Presiding

Appearances:   Appellant Carolyn Lucille Davis argued pro se.[**]

Before: KURTZ, LAFFERTY and TAYLOR, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**]None of the named appellees have actively participated in this appeal.

**INTRODUCTION**

Chapter 12[1] debtor Carolyn Lucille Davis appeals from an order denying her second motion for an extension of time to file her chapter 12 plan and from an order dismissing her chapter 12 case for not timely filing her plan.

Because it is impossible to tell what legal standard the bankruptcy court applied when it denied the second extension motion and because the bankruptcy court did not make any findings supporting its denial, the order denying the second extension motion must be VACATED. The dismissal of the bankruptcy case hinged on the denial of the second extension motion, so we also must VACATE the order dismissing the bankruptcy case. Thus, both rulings shall be VACATED, and this matter shall be REMANDED for further proceedings.

**FACTS**

Davis identifies herself as the latest in a long line of family farmers, who have been farming in the Paso Robles area since the 1800's. Of late, however, Davis' farming activities have been subject to considerable financial setbacks. Indeed, this is Davis' third bankruptcy filing in the last seven years. She filed a chapter 7 bankruptcy case in 2010, in which she was granted a discharge, and a prior chapter 12 case in 2011, which was dismissed based on eligibility issues. See Davis v. U.S. Bank, N.A. (In re Davis), 778 F.3d 809, 811 (9th Cir. 2015).

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

On June 13, 2016, Davis commenced, pro se, her latest chapter 12 bankruptcy case. She filed her bankruptcy schedules and statement of financial affairs two weeks later, on June 27, 2016. Other than the § 341(a) meeting of creditors held on July 14, 2016, nothing much of note occurred in the case until Davis filed on September 9, 2016 a motion to extend the deadline for filing her chapter 12 plan, from September 12, 2016 to October 12, 2016.

In the declaration attached to her extension motion, Davis explained that, as a result of California's severe multi-year drought, two days prior, the wells she relied upon to irrigate her crops had all run dry. She further explained that a well drilling company already had visited her farm that day, so that she and that company could assess what options she might have in terms of obtaining more well water from her property. While she did not specify how long that process would take, her comments indicate that it would be a multi-week process.

Davis described her farming facility as a "pumpkin patch and fresh produce seasonal event u pick facility" known as "Granny's Gardens." According to Davis, between her wells running dry and the fact that every day in October is the harvest season for her facility, she faced a very hectic time over the next thirty days.

In a one-sentence order entered the same day as the motion was filed, the bankruptcy court granted the motion, stating as follows:

> Debtor having filed an ex parte motion requesting an extension of time to file a chapter 12 plan, and the court having considered the motion and taken judicial notice of the proceedings since the commencement of the case, and having found cause for an extension of time,

3

it is

ORDERED that Debtor's motion is granted and that a chapter 12 plan must be filed with the court not later than 4:00 p.m. on October 12, 2016.

Order Granting Motion for Extension of Time (Sept. 9, 2016).

On October 12, 2016 – the same day her chapter 12 plan was due – Davis filed her second motion to extend the time to file her chapter 12 plan. Davis asserted that her second extension motion was necessitated by a family medical emergency. Davis' accompanying declaration stated that the day before her chapter 12 plan was due her son was admitted to the hospital with severe abdominal pain and internal bleeding and scheduled for a surgical procedure.

That same day, and again in a one sentence order, the bankruptcy court denied Davis' second extension motion, stating as follows:

Debtor having filed an ex parte motion requesting an extension of time to file a chapter 12 plan, and the court having considered the motion and taken judicial notice of the proceedings since commencement of the case, it is

ORDERED that the Debtor's motion is denied.

Order Denying Motion for Extension of Time (Oct. 12, 2016).

Notwithstanding this denial, Davis filed her chapter 12 plan on October 17, 2016, which proposed to pay her secured creditors interest only payments on an annual basis in an aggregate amount of roughly $50,000 per year for the next five years. Davis further disclosed in her plan that her payment proposals assumed her receipt of disaster relief funds or agricultural loan proceeds that would enable her to install new well pumping equipment necessary in order to restore her ability to irrigate

4

her farm with well water.

The bankruptcy court did not consider Davis' plan other than to note that it was untimely filed. On October 24, 2016, without advance notice or a hearing, the Clerk of Court entered a form order and notice of dismissal based on Davis' failure to timely file a chapter 12 plan. Davis timely filed her notice of appeal on November 3, 2016.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), and we have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1.   Did the bankruptcy court commit reversible error when it denied Davis' second extension motion?

2.   Did the bankruptcy court commit reversible error when it dismissed Davis' bankruptcy case because her chapter 12 plan was untimely filed?

**STANDARDS OF REVIEW**

Generally speaking, a bankruptcy court's denial of an extension motion is reviewed for an abuse of discretion. See Mahakian v. William Maxwell Invs., LLC (In re Mahakian), 529 B.R. 268, 274 (9th Cir. BAP 2015).

The abuse of discretion standard also applies to a bankruptcy court's decision to dismiss a bankruptcy case under § 1208(c). Rice v. Dunbar (In re Rice), 357 B.R. 514, 517 (8th Cir. BAP 2006), aff'd, 271 F. App'x 538 (8th Cir. 2008).

When we apply the abuse of discretion standard, we review de novo whether the bankruptcy court identified and applied the

5

correct legal standard, and we review factual findings under the clearly erroneous standard. United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

Interpreting the statutory constraints on the court's authority to grant an extension of time is a question of law we review de novo. See generally In re Mahakian, 529 B.R. at 274; Mendez v. Salven (In re Mendez), 367 B.R. 109, 113 (9th Cir. BAP 2007).

**DISCUSSION**

Section 1221 provides that "the debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend such period if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." The standard set forth in § 1221 is more stringent than the ordinary "for cause shown" standard set forth in Rule 9006(b). It effectively requires the bankruptcy court, before granting an extension request, to find that the delay necessitating the extension was caused by "circumstances beyond the debtor's control." First Sec. Bank & Trust Co. v. Vegt, 511 B.R. 567, 585 (N.D. Iowa 2014).

One leading treatise explains the rationale behind this requirement:

> [T]he 90-day limitation was probably included in chapter 12 for the benefit of creditors rather than for the benefit of the debtor. Because chapter 12 lacks the safeguards for creditors that are provided in chapter 11, the 90-day limitation . . . is [one of] the primary protection[s] for creditors against a debtor's languishing in chapter 12 without confirming a plan. Thus, it is appropriate that the debtor should be required to meet a stringent burden if the debtor seeks an extension of the 90-day period.

6

8 Collier on Bankruptcy ¶ 1221.01[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2017).

In the appeal before us, we do not know what legal standard the bankruptcy court applied when it denied Davis' second extension motion. When it granted her first extension motion, the court specifically based its grant on a finding of "cause" shown. This was not the correct standard.

Arguably, we could assume that the bankruptcy court, when it denied the second extension motion, applied the same "for cause" standard it applied to the first extension motion but found Davis' reason for the delay not credible, insufficient grounds, or both. We arguably could speculate that, if the bankruptcy court found Davis' second extension motion lacking under the "for cause" standard, it doubtlessly would have denied her second motion under § 1221's more stringent "circumstances for which the debtor should not justly be held accountable" standard.

But this line of reasoning does not persuade us that affirmance is appropriate. It is not just the relative stringency of the two standards that is different; the focus of the two standards is different. The focus of § 1221 is the cause for the delay and whether the debtor reasonably and justly could have been expected to have prevented it.

Davis' two extension motions set forth grounds that, on their face, seem fairly compelling: her wells ran dry during a severe drought and her son needed emergency medical treatment in the midst of her harvest season – perhaps the most critical time of year for her "u pick" produce farming facility. These asserted grounds reasonably might lead a court to find that the

7

filing delay resulting therefrom was caused by "circumstances for which the debtor should not justly be held accountable." But they also reasonably could lead to a contrary finding – that the delay was within Davis' control. After all, neither of Davis' extension motions offered any explanation why she needed to set aside for the last possible moment (day 90 and day 120) the filing of her chapter 12 plan.[2]

At bottom, the problem confronting us here is that the bankruptcy court made no findings at all – either way. Our role as an appellate court is inherently limited. Mirner v. First Republic Bank (In re Mirner), 2011 WL 3300102, at *2 (Mem. Dec.) (9th Cir. BAP May 24, 2011). We review bankruptcy court decisions – their findings of fact and conclusions of law. See 28 U.S.C. § 158; see, e.g., Bronitsky v. Bea (In re Bea), 533 B.R. 283, 285 (9th Cir. BAP 2015); Pemstein v. Pemstein (In re Pemstein), 492 B.R. 274, 280 (9th Cir. BAP 2013). We do not ordinarily render factual findings in the first instance. Calderon v. Lang (In re Calderon), 507 B.R. 724, 733 (9th Cir. BAP 2014); In re Mirner, 2011 WL 3300102, at *2. Simply put, the bankruptcy court has not provided us with what we need to conduct our appellate review.

---

[2]Most of the exigencies and crises Davis has faced are not that markedly different from those faced by other farmers. Droughts, floods, frosts, crop failures, and pest problems are all too common events. Nonetheless, Congress imposed exacting time limits on family farmers to avail themselves of chapter 12 relief. We must abide by the plain language of the statute, and the legal standards it imposes. Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). We cannot create equitable exceptions to the statutory standards. Law v. Siegel, 134 S. Ct. 1188, 1194–95 (2014).

8

Accordingly, we conclude that we must VACATE the bankruptcy court's denial of the second extension motion, and we must REMAND so that the bankruptcy court can apply the correct legal standard and make all necessary factual findings.[3]

Failure to timely file a plan under § 1221 is grounds for dismissal. See § 1208(c)(3). Here, the bankruptcy court dismissed Davis' chapter 12 case on this basis. In light of our vacating the order denying Davis' second extension motion, it no longer is clear that Davis' chapter 12 plan – filed on October 17, 2016 – was untimely. Consequently, the bankruptcy court's case dismissal order also must be VACATED, pending the bankruptcy court's consideration on remand of Davis' second extension motion.

It also is worth noting that, under the plain language of § 1208(c)(3), dismissal based on the debtor's failure to file a timely chapter 12 plan is discretionary rather than mandatory. Furthermore, § 1208(c) requires, before dismissal, "notice and a hearing" (as that phrase is defined in § 102(1)). Yet the dismissal here appeared to reflexively follow the denial of Davis' second extension motion. This procedural history troubles us because it is not entirely clear whether Davis was afforded due process before her case was dismissed. See Mullane v. Cent.

---

[3]We note that neither of Davis' extension motions were served on any other parties to the bankruptcy case. Because this notice issue was not addressed in the first instance by the bankruptcy court, and is beyond the scope of this appeal, we decline to address it. But the bankruptcy court, on remand, should decide wether any parties in interest are entitled to notice of the second extension motion and whether Davis should now be given an opportunity to serve them.

9

<u>Hanover Bank & Tr. Co.</u>, 339 U.S. 306, 314 (1950) (generally explaining procedural due process requirements); <u>but see also</u> <u>Tennant v. Rojas (In re Tennant)</u>, 318 B.R. 860, 870-71 (9th Cir. BAP 2004) ("a procedure is 'perfectly appropriate' that notifies the debtor of the deficiencies of his petition and dismisses the case sua sponte without further notice and a hearing when the debtor fails to file the required forms within a deadline."). Even so, in light of our analysis and resolution of this appeal, it is unnecessary for us to further address this issue.[4]

**CONCLUSION**

For the reasons set forth above, both the bankruptcy court's denial of the second extension motion and its dismissal of the bankruptcy case are VACATED, and this matter is REMANDED for further proceedings consistent with this decision.

---

[4]We also are troubled that, according to Davis, the bankruptcy court routinely imposes an "unwritten rule" prohibiting more than one extension of time to file chapter 12 and/or chapter 13 plans. However, like the § 1208(c) issue, we need not further address the bankruptcy court's unwritten rule prohibiting more than one time extension.