**NOT FOR PUBLICATION**



FILED

NOV 07 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   AZ-17-1110-FSKu |
| ABIGAIL J. DUNCAN, | Bk. No.   2:15-bk-14927-PS |
| Debtor. | |
| ABIGAIL J. DUNCAN, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| DALE D. ULRICH, | |
| Appellee. | |

Argued and Submitted on October 26, 2017
at Phoenix, Arizona

Filed – November 7, 2017

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Paul Sala, Bankruptcy Judge, Presiding

Appearances:    David L. Brown of Brown and Associates, PLLC
argued on behalf of appellant Abigail J. Duncan;
Terry A. Dake argued on behalf of appellee Dale D.
Ulrich.

Before: FARIS, SPRAKER, and KURTZ, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Chapter 7[1] debtor Abigail J. Duncan appeals from the bankruptcy court's order sustaining chapter 7 trustee Dale D. Ulrich's ("Trustee") objection to her homestead exemption. The bankruptcy court found that, on the date of her bankruptcy petition, Ms. Duncan intended to abandon the property as her homestead. The issue of Ms. Duncan's intent is a question of fact. We discern no clear error and AFFIRM.

## FACTUAL BACKGROUND

**A.    Prepetition events**

Ms. Duncan and her then-husband resided in their home located on Kingbird Drive in Gilbert, Arizona (the "Kingbird Drive Property") since 2006. In 2010, Ms. Duncan divorced her husband and acquired his interest in the Kingbird Drive Property. Faced with the daunting prospect of making monthly mortgage payments on her own, she obtained a modification of the existing loan on the Kingbird Drive Property, which reduced the interest rate on the loan to two percent per annum, with annual increases to 5.25 percent in 2018.

At the end of 2013, realizing that she could no longer afford to stay in the Kingbird Drive Property, Ms. Duncan decided to move into a rental apartment on Market Street in Gilbert, Arizona (the "Market Street Rental"). She continuously resided at the Market Street Rental from January 10, 2014.[2]

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] As of the evidentiary hearing, Ms. Duncan's lease for the
(continued...)

2

Ms. Duncan initially leased the Kingbird Drive Property to Jan Krajniak and his wife from January 2014 through January 2015. Ms. Duncan thereafter orally agreed to allow the Krajniaks to stay in the property until November 2017.

**B.    Bankruptcy filing and meeting of creditors**

On November 23, 2015, Ms. Duncan filed her chapter 7 bankruptcy petition.  On that date, she had been residing at the Market Street Rental for nearly one year and eleven months.  She claimed a $150,000 exemption on the Kingbird Drive Property under Arizona Revised Statutes section 33-1101(A).

Ms. Duncan attended a § 341(a) meeting of creditors on December 29, 2015.  When the Trustee asked her about her claimed homestead exemption and her intentions regarding the Kingbird Drive Property, she testified that she could not afford to keep the property and intended to sell it:

> HEARING OFFICER: Okay.  And what is the status of [the Kingbird Drive Property]?
>
> THE WITNESS: **It's currently rental.  I have tried to – I'm going to sell it.  I have renters in there right now.  So, I want to get rid of it, because I'm not going to be able to afford it for myself and two kids.  My salary's not going to cut it.**
>
> . . .
>
> HEARING OFFICER: Are you intending to make any more mortgage payments or are you going to let it get –
>
> THE WITNESS: Yeah.  Yeah, because **I want to just get this done.**
>
> . . .

[2](...continued)
Market Street Rental continued through January 9, 2017.  The bankruptcy court found that she intended to extend her current lease when it expired.

3

HEARING OFFICER: You have it listed at all to try and sell it?

MR. BROWN: **We were waiting until you decided if you were going to abandon it or not.**

(Emphases added.)

## C.    The Trustee's objection to homestead exemption

On January 27, 2016, the Trustee filed a Motion to Extend Exemption Deadline.  He represented that he was attempting to reach a settlement with Ms. Duncan regarding her claimed homestead exemption and requested an extension of the objection deadline to March 15.

On February 5 - over a month after the meeting of creditors and before the bankruptcy court ruled on the motion - the Trustee filed an objection to the claimed homestead exemption ("Objection").  The bankruptcy court subsequently granted the motion to extend the deadline.

In his Objection, the Trustee argued that the Arizona homestead exemption is only applicable to property "in which the person resides."  Ms. Duncan had not resided at the Kingbird Drive Property since late 2013 or early 2014, and she leased the property to another person in January 2014.  He also stated that "the debtor testified that she has no intention of returning to the property.  Rather, she plans to sell the property or, as she puts it, 'I want to get rid of it.'  She further admitted she cannot afford to keep the property."

In response, Ms. Duncan contended that she had a valid homestead exemption at the time she filed her bankruptcy petition because she had resided at the Kingbird Drive Property from 2006 through January 2014.  She argued that, although she was not then

4

residing at the Kingbird Drive Property, she did not abandon the homestead and did not intend to sell the property. She pointed to her driver's license and voter registration, which listed the Kingbird Drive Property as her address, as well as the fact that she had obtained an order in May 2015 preventing her ex-husband from claiming any interest in the Kingbird Drive Property.

In March 2016, prior to the hearing on the Trustee's Objection, Ms. Duncan obtained a new modification of the mortgage loan. The modification fixed the interest rate at four percent, extended the amortization period to 2056, and set the monthly payments at $2,016.44.

After an initial hearing, the court set an evidentiary hearing and ordered the parties to file a joint pretrial statement. The parties stipulated to certain facts, including that "[t]he trustee filed a timely objection to the exemption claimed by the Debtor in the Kingbird property . . . ."

At the evidentiary hearing, Ms. Duncan testified that she had been residing continuously at the Market Street Rental since January 10, 2014 and intended to renew the lease for another year beginning January 2017. She also testified that Mr. Krajniak had been living continuously at the Kingbird Drive Property since January 2014. She admitted that she listed her home address on her 2014 and 2015 tax returns as the Market Street Rental and reported the Kingbird Drive Property as a rental property.

The Trustee then asked Ms. Duncan about her statements concerning the Kingbird Drive Property at the meeting of creditors:

Q. So you said you want to get rid of [the Kingbird

5

Drive Property]?

A. Yes.

Q. And that was what you were planning to do at the time?

A. Yes.

Q. And that's what you were planning to do when you filed the bankruptcy case, was get rid of the house?

A. And if you see the last line, it said my salary's not going to cut it.

Q. So you needed to get rid of the house?

A. Things have changed since then.

Q. Okay. But I'm talking about when the bankruptcy was filed and what you told the Trustee at the creditors' meeting?

A. At that point in time, yes.

Ms. Duncan also agreed with the Trustee that, "[o]nce the trustee decided not to abandon the property, then the Debtor changed her mind about getting rid of it."

The bankruptcy court took the matter under advisement and entered a detailed ruling sustaining the Trustee's Objection. It first held that Ms. Duncan established her homestead at the Kingbird Drive Property by residing there from 2006 through January 2014.

The critical question was whether Ms. Duncan had abandoned her homestead interest. The court held that the mere fact that Ms. Duncan moved from the Kingbird Drive Property and rented it to Mr. Krajniak did not establish that she had permanently removed from the property. Nevertheless, the court found that the Trustee had established that Ms. Duncan had a clear intent to permanently remove from the Kingbird Drive Property: Ms. Duncan

6

had testified at the meeting of creditors that "she could not afford the Kingbird Property, that she wanted to get rid of the property and that she intended to sell it." The court found that she changed her mind only when she obtained a loan modification in March 2016.

Regarding Ms. Duncan's intention on the petition date, the court found:

> The Debtor's testimony that she changed her mind regarding the sale of the property after the March 2016 loan modification reinforces that her prior intention, expressed at the first meeting of creditors, which [sic] was to sell the Kingbird Property. The loan modification, and the self-admitted change in the Debtor's desire to sell the property, occurred more than three months after the Petition Date. The Debtor's testimony at the first meeting of creditors that she intended to sell the property was more close in time to the Petition Date and is, therefore, more instructive as to the Debtor's intent on that date.

Ms. Duncan timely filed her notice of appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in sustaining the Trustee's Objection to Ms. Duncan's homestead exemption based on Ms. Duncan's intention to remove permanently from the Kingbird Drive Property on the petition date.

(2) Whether the Objection was untimely.

## STANDARDS OF REVIEW

A debtor's right to claim an exemption is a question of law that we review de novo. Similarly, we review de novo the

7

bankruptcy court's interpretation of state exemption laws. Diaz v. Kosmala (In re Diaz), 547 B.R. 329, 333 (9th Cir. BAP 2016). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988).

With regard to claimed exemptions, "the issue of a debtor's intent is a question of fact to be reviewed under the clearly erroneous standard." Kelley v. Locke (In re Kelley), 300 B.R. 11, 16 (9th Cir. BAP 2003) (citing Coughlin v. Cataldo (In re Cataldo), 224 B.R. 426, 428-29 (9th Cir. BAP 1998)). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.), 262 F.3d 725, 729 (8th Cir. 2001) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)); see Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (A factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed."). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003).

**DISCUSSION**

**A.  The bankruptcy court did not clearly err in determining that Ms. Duncan intended to remove permanently from the Kingbird Drive Property.**

Ms. Duncan argues that the Trustee failed to establish that she had a clear intent to abandon her homestead at the time she

8

filed her bankruptcy petition. We disagree. The bankruptcy court's factual determination of Ms. Duncan's intention on the date of her bankruptcy filing was not clearly erroneous.

### 1. Abandonment of homestead in Arizona requires a clear intent of a permanent removal.

Our inquiry begins with the relevant statutes. Arizona has opted out of the federal bankruptcy exemption scheme, so we must examine and apply Arizona law. Ford v. Konnoff (In re Konnoff), 356 B.R. 201, 204 (9th Cir. BAP 2006).

Section 33-1101 of the Arizona Revised Statutes provides a homestead exemption. It states, in relevant part:

> A. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred fifty thousand dollars in value, any one of the following:
>
> > 1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.
>
> . . .
>
> C. The homestead exemption, not exceeding the value provided for in subsection A, automatically attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property. The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds, whichever period is shorter. Only one homestead exemption at a time may be held by a person under this section.

Ariz. Rev. Stat. § 33-1101.

The exemption statute is liberally construed and does not necessarily require physical presence on a day-to-day basis. Garcia v. Garcia (In re Garcia), 168 B.R. 403, 408 (D. Ariz. 1994). A "temporary absence" will not defeat a homestead claim,

9

but the debtor must intend that the home be her residence. Id.

Once a homestead has been established, section 33-1104 provides for abandonment under certain circumstances:

A. A homestead may be abandoned by any of the following:

1. A declaration of abandonment or waiver.

2. A transfer of the homestead property by deed of conveyance or contract for conveyance.

3. A permanent removal of the claimant from the residence or the state. A claimant may remove from the homestead for up to two years without an abandonment or a waiver of the exemption.

Ariz. Rev. Stat. § 33-1104.

We discussed the application of these two statutes in Calderon v. Lang (In re Calderon), 507 B.R. 724 (9th Cir. BAP 2014), which presented a similar factual situation. In that case, the debtor filed for chapter 7 bankruptcy and claimed his former residence as exempt. At the time the debtor filed for bankruptcy, he had lived away from the property for a little more than a year and had rented the property to third-party tenants who had exercised their option to extend the lease through a second year. Id. at 726.

The trustee objected to the homestead exemption, arguing that the debtor had abandoned the property. However, the debtor claimed that he had moved out only temporarily to reduce his housing expenses and intended to return to the residence. Id. at 727.

The court held an evidentiary hearing and sustained the trustee's objection. The trustee's evidence tended to show that the debtor owned the residence but was not living there and had

10

rented out the residence.  The trustee conceded that the debtor had expressed a generalized intent "to move back into [the residence] at some point."  Id. at 728.  The court held that the totality of the evidence demonstrated that the debtor was not living at the residence "for the better part of the last two years" and, after moving out, he had been using the residence as an income-producing property.  Id.  The court stated that the debtor's "vague" intent to return to the residence was not sufficient to sustain the homestead exemption under section 33-1101(A).  Id.

On appeal, we remanded to the bankruptcy court on the issue of the debtor's intent.  We stated that the appeal hinged on section 33-1104(A)(3) and the debtor's intent to "permanently" remove from the property:

> So stated, the usual meaning of the word "permanent" introduces an element of intent into the statutory inquiry.  This focus on intent for purposes of determining whether debtors have permanently abandoned their homestead is consistent with the consideration of intent for purposes of determining debtors' "residence" under Arizona's homestead exemption laws.

Id. at 731 (citations omitted).

Construing the two sentences of section 33-1104(A)(3), we summarized the meaning of that section:

> On the petition date, if the debtor has been living elsewhere for less than two years, **only evidence of a clear intent of permanent removal will suffice to permit the bankruptcy court to find that the debtor has abandoned his homestead exemption under Arizona law.**  On the other hand, on the petition date, if the debtor has been living elsewhere for two years or more, then the debtor is presumed to intend for the removal to be permanent, and only evidence of a clear intent for the removal to be temporary will overcome that presumption.

11

Id. at 732 (emphasis added). We held that the bankruptcy court had misapplied the law by requiring the debtor, who had been removed for less than two years, to prove that he had more than a "vague intent" to return to the residence. Id. at 733. Because the record as to the debtor's intent was poorly developed, we remanded for the bankruptcy court to determine whether to reopen the evidence or to apply the correct law to the established facts.

### 2. The bankruptcy court properly evaluated the evidence to discern Ms. Duncan's intent at the time she filed the bankruptcy petition.

In the present case, the bankruptcy court followed the correct legal standard that we outlined in Calderon. There is no dispute, and the court found, that Ms. Duncan had established her homestead in the Kingbird Drive Property by virtue of having resided there from 2006 through January 2014. The question becomes whether she intended to permanently remove from the property and therefore abandoned her homestead interest.

As we stated in Calderon, "**[o]n the petition date**, if the debtor has been living elsewhere for less than two years, only **evidence of a clear intent of permanent removal** will suffice to permit the bankruptcy court to find that the debtor has abandoned his homestead exemption under Arizona law." Id. at 732 (emphases added).[3] There is no dispute that Ms. Duncan had removed from

---

[3] Ms. Duncan argued to the bankruptcy court that Calderon is on all fours with her case. While Calderon is instructive for laying out the statutory framework of a debtor's abandonment of a homestead and its underlying facts are strikingly similar, its procedural posture is distinguishable from the present case. In
(continued...)

12

the Kingbird Drive Property in January 2014 and filed her petition on November 23, 2015 – less than two years after she moved out of the property. Therefore, the Trustee had the burden of proving that Ms. Duncan clearly intended on the petition date to abandon the homestead permanently.

The bankruptcy court received testimony from Ms. Duncan regarding her intent as to the disposition of the Kingbird Drive Property. It found that, as of the petition date, Ms. Duncan had a clear intent of permanent removal from the property because she could not afford to keep the property and intended to "get rid of it." She only changed her intention to sell the property when she was able to modify her mortgage loan in March 2016. We must defer to the bankruptcy court's findings as to a debtor's intent unless we are left with a firm conviction that the bankruptcy court committed a mistake. All of these findings are supported by the record, and the bankruptcy court did not clearly err.

Ms. Duncan argues that the bankruptcy court erred in relying on her testimony at the meeting of creditors to determine her intent a month earlier, when she filed her bankruptcy petition. She is correct that exemptions are determined as of the petition date. See Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193,

[3](...continued)
that case, the bankruptcy court received only the slightest evidence regarding the debtor's intent: the trustee's hearsay testimony. Thus, we remanded for the court to decide whether to take further evidence. Conversely, in the present case, the evidentiary hearing focused almost exclusively on Ms. Duncan's intent to remove from the Kingbird Drive Property, and Ms. Duncan herself testified. The bankruptcy court had ample evidence with which to make a finding of Ms. Duncan's intent.

13

1199 (9th Cir. 2012) ("Under the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition."). But the bankruptcy court properly concluded that Ms. Duncan's testimony at the meeting of creditors was the best evidence of her intention at the time she filed the petition a month earlier.[4] Ms. Duncan does not offer any authority on appeal that the bankruptcy court could not rely on her testimony at the meeting of creditors. Rather, she asks us to look at favorable facts in the years leading up to the petition and following the March 2016 loan modification and to ignore all evidence to the contrary. We decline to take such a selective view of the evidence.

Ms. Duncan further contends that the bankruptcy court erred in relying on her treatment of the Kingbird Drive Property as a rental property as evidence of her intent. But the court did not consider this factor in isolation, nor did it conclude that a rental property always loses the homestead exemption; the court merely found that she treated the Kingbird Drive Property as a rental property and the Market Street Rental as her primary residence.

Ms. Duncan argues that the bankruptcy court misunderstood the effect of the March 2016 loan modification, which allegedly "resolved the issue of the intended sale raised at the 341 meeting." But the bankruptcy court found that the March 2016

---

[4] Ms. Duncan does not dispute her testimony at the meeting of creditors, but implies that she would have testified that her intent a month earlier was different. But the Trustee allowed her to clarify her intent, and she did not offer a different answer or explanation at the evidentiary hearing.

14

loan modification only kept her monthly payments at their current amount (rather than increasing with the variable interest rate), even though she had testified that she could still not afford the payments at the time. The court also found that she admitted that she changed her mind about selling the Kingbird Drive Property only after the March 2016 loan modification, indicating that she had previously (including on the petition date) intended to abandon the property. Although it may have become financially possible for Ms. Duncan to retain the Kingbird Drive Property in March 2016, the bankruptcy court was correct to focus on her intent on the petition date.

She also argues that the bankruptcy court erred by not addressing her homestead exemption in the proceeds from the sale of the Kingbird Drive Property under section 33-1101(C). But the only relevant question is whether Ms. Duncan intended to return to her property and keep it as a homestead. The bankruptcy court found that, as of the petition date, she did not have such intent, so she had abandoned the homestead exemption and she would not be able to thereafter claim the exemption on the sale proceeds in any event.

She contends that the court did not consider all of the evidence of her intent to keep the Kingbird Drive Property. But the bankruptcy court was not required to explicitly address the significance of every single piece of evidence.[5]

---

[5] For example, Ms. Duncan argues that her intent to return to the Kingbird Drive Property is evidenced by her efforts to refinance the property; by her defense of her interest in the property against her ex-husband; and by her desire to keep her
(continued...)

15

**B. The Trustee's Objection was timely.**

Ms. Duncan asserts that the Trustee's Objection was both tardy and premature. She argues that the Trustee did not file his Objection within thirty days of the December 29 meeting of creditors or obtain an extension of time before filing; in this respect, his February 5 Objection was untimely. The court ruled on the motion to extend time on February 25, but the Trustee had already filed his Objection; in this respect, she argues that his Objection was premature.

This contention is frivolous. Ms. Duncan stipulated before the bankruptcy court that the "[t]he trustee filed a timely objection to the exemption claimed by the Debtor in the Kingbird property . . . ." She cannot now argue on appeal that the Objection was untimely.

Ms. Duncan admits that she did not raise this argument below. The court so noted the lack of an objection when ruling on the request for an extension. Nor did Ms. Duncan take issue with the Trustee's timeliness in her response to the Objection. We will not consider issues raised for the first time on appeal. See Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 543 (9th Cir. 2016). Even if she had not stipulated, she has waived the timeliness argument.

Even if we were to consider this issue, it is meritless. The bankruptcy court extended the deadline to file an objection

---

[5](...continued) children in the same school district. The bankruptcy court's weighing of this evidence along with all of the other evidence was not clearly erroneous.

to the homestead exemption to March 15, 2016.  The Trustee had filed the Objection on February 5, which was well before the court's deadline.  She provides no authority or analysis to support her contention that the court needed to specify that its order retroactively covered the Objection.  It was thus timely.

Further, she argues that the court's order "did not provide for an approval . . . for cause."  But the Trustee explained that an extension was necessary because he was working toward reaching a settlement with Ms. Duncan, and the court specifically found "[g]ood cause appearing."

Accordingly, the Trustee's Objection was neither tardy nor premature, and Ms. Duncan's argument to the contrary is frivolous.

**CONCLUSION**

The bankruptcy court did not err in sustaining the Trustee's Objection to Ms. Duncan's homestead exemption.  Accordingly, we AFFIRM.

17